LOUISVILLE & N. R. CO. v. BROWN et al., State Railroad Com'rs.

(Circuit Court, N. D. Florida. June 30, 1903.)

1. FEDERAL COURTS—POWER TO GRANT INJUNCTION—ORDERS OF STATE RAILROAD COMMISSION.

The statute of Florida creating the state railroad commission vests it with executive, legislative, and quasi judicial powers; but such judicial powers appertain only to acts of a judicial character, and the commission is not a state court, and as such exempt from the interference of a federal court by injunction, under Rev. St. § 720 [U. S. Comp. St. 1901, p. 581], with respect to the enforcement of its orders made in a legislative capacity, as in fixing future rates to be charged by a railroad, which it is empowered to enforce only by regular proceedings in the courts.

2. RAILROADS—STATE REGULATION OF RATES—DETERMINING VALUE OF PROPERTY.

A sworn return of the value of a line of railroad, made to the state authorities for purposes of taxation by an officer of the company, is evidence of the value of the property, to be considered in determining the reasonableness of rates or charges fixed by the state for the carriage of passengers or freight, but is not conclusive on the company for the latter purpose, and does not estop it to show that the actual cost of reproducing the property would be much greater than the value so given.

3. SAME—REASONABLENESS OF RATES—BASIS OF DETERMINATION.

The fact that a line of railroad is operated in connection with other lines owned by the same company, but under separate charters, whereby the earnings of such line are increased and its operating expenses reduced, does not prevent its being considered as a separate and independent line for the purpose of determining the reasonableness of rates thereon, fixed by the state; full consideration of the joint operation being given when the road is credited for the increased business and reduced expenses.

4. SAME—INJUNCTION AGAINST ENFORCEMENT OF REDUCED RATES.

A railroad company, so long as its rates are reasonable and not discrimative, is entitled to earn an amount equal to the usual and legal rate of interest in the locality where its road is situated on the actual value of the road and equipment, and it is entitled to a preliminary injunction against the enforcement of a reduction of rates on a prima facie showing that during 19 years it has earned much less than such

legal interest, and on its giving bond to indemnify all persons in adverse interest in case it shall finally be determined that it is not entitled to the relief sought.

In Equity. Suit to enjoin enforcement of an order of the Railroad Commission of the State of Florida fixing passenger rates on complainant's road. On motion for preliminary injunction.

Ed. Baxter and W. A. Blount, for complainant.

J. M. Bans and A. W. Cockerell, for defendants.

PARDEE, Circuit Judge. This case has been submitted on an application for an injunction pendente lite, and not for final decision on the merits. An elaborate opinion may be filed later in the case, but my present purpose is merely to outline my views on the questions now presented.

The bill, which is skillfully drawn, sets forth that the Railroad Commission of the State of Florida has ordered a reduction in the prospective rates of carrying passengers on the complainant's railroads situated in the state of Florida, and has ordered complainant to observe said reduced rates under very severe pains and penalties imposed by the law of the state of Florida looking to the enforcement of the orders of the commission; and it shows by facts and figures relating to cost and value of the railroad properties, cost of maintaining and operating the same, amount of business, freight and passenger, and receipts, that the enforced reduction of the passenger rates, as ordered by the commission, will so reduce and impair the revenues of the complainant arising from the operation of its railroads as to deprive it of a just revenue therefrom, and be to that extent confiscatory of the complainant's property. The bill and exhibits submitted by the complainant on this hearing decidedly support the contention of the complainant, and show a case wherein, on general principles, the complainant is entitled to relief. The court has general jurisdiction of the case by reason of the diverse citizenship of the parties and from the constitutional questions involved; and it has jurisdiction in equity by reason of the inadequacy of all remedies at law and to prevent a multiplicity of suits, which would result if the complainant should ignore the alleged illegal orders of the commission, and attempt to stand upon its alleged rights in the premises.

In the demurrer and answer to the bill, the latter being taken as an affidavit, many objections to the right of the complainant to an injunction are urged, and in the briefs they are elaborated with great skill and ingenuity. The main contention of the respondents is that as the legislative act which creates and defines the powers and authority of the railroad commission vests in the said commission "judicial powers to do or enforce or perform any function, duty or power conferred upon them by the act to the exercise of which judicial power is necessary," the said commission, in performing the various powers and duties vested in the commissioners by the act, is a state court, within the meaning of section 720 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 581], which prohibits any court of the United States from issuing an injunction restraining proceedings

in any court of a state. An inspection of the act of the Legislature of the state of Florida creating the railroad commission shows that, as is usual in such cases, the commission is vested with executive, legislative, and quasi judicial powers, but does not show that the commission is to any degree created and established as a court for the final adjudication and determination of the rights of individuals or the rights of property. Whatever may be the act, order, or proceeding of the commission, whether of an executive, legislative, or quasi judicial character, the commission's findings are only prima facie determined and can only be enforced in the courts; and in every instance the rights of individuals or the rights of property concerned can be re-examined and determined in the regular course. But be that as it may, it is clear from the act as a whole that the judicial powers conferred by the act are quoad judicial acts to be performed by the commission, and were not intended to extend to the performance of any of the legislative powers conferred upon the commission.

It seems to be well settled that the power to fix future rates is legislative, and not judicial (Interstate Commerce Commission v. Cincinnati, N. O. & T. & P. R. R. Co., 167 U. S. 499, 17 Sup. Ct. 896, 42 L. Ed. 243); and therefore it may be assumed as beyond question that the Florida railroad commission, in regulating and reducing the future rates of passenger fares to be charged and collected by the Louisville & Nashville Railroad Company on its lines in the state of Florida, acted in a legislative capacity, and that with regard to enforcing the said reduction the commission is given no judicial powers, being limited, under the statute creating the commission, to the institution of proceedings, or the direction of the same, in the regular courts. For an interesting discussion of these matters, see Western Union Telegraph Co. v. Myatt (C. C.) 98 Fed. 341, 342, and State ex rel. v. Johnson (Kan. Sup.) 60 Pac. 1060, 49 L. R. A. 662. The reduced rate of passenger fares over the Louisville & Nashville lines in the state of Florida ordered by the railroad commission of Florida chiefly affects the Pensacola & Atlantic Railroad, now owned and operated by the Louisville & Nashville Railroad Company as the Pensacola & Atlantic Division, and, of course, whether or not the reduced rate ordered by the commission will, if carried into operation, to any extent operate a confiscation of this property, depends largely upon the value of the Pensacola & Atlantic Railroad. As to this matter the bill charges that the original cost of the economical construction of said Pensacola & Atlantic Railroad, as of June 30, 1885, was $2,831,201.95, and that the cost of reproducing at this time, and therefore the present actual minimum value of the said Pensacola & Atlantic Railroad, is $2,666,-633.17. These values are sustained by the affidavits of officials and employés of the complainant, the Louisville & Nashville Railroad. In response to this showing the respondents aver that in their opinion the present actual value of the Pensacola & Atlantic Railroad on a basis of its reproduction would be not exceeding $1,000,000; and they further aver that Walker D. Hines, Esq., vice president of the complainant railroad company, has made and filed with the comptroller of the state of Florida a return of the said Pensacola & Atlantic Railroad, sworn to by the said Hines on the 28th day of February,

1903, showing that the total value thereof, including main branch, switch and side tracks, lots or parts of lots not leased or rented, rolling stock, equipment, and terminal facilities, is $758,820; and it is contended with much force that the return by the railroad company of its property for taxation should operate an estoppel against the railroad company's claiming in this suit that the actual cost of reproduction is much over $2,000,000. The return in question is submitted as an exhibit, and is not denied, but is sought to be avoided, and the affidavit of Mr. Hines is offered to the effect that the returns to said comptroller were made purely for the purposes of taxation, and that the basis of valuation for taxation is and ought to be very different from the basis to be regarded in determining the extent to which railroad commissions can reduce the revenues of a railroad company, and that the minimum valuation for the latter purpose should be the present cost of reproducing the property; and he states, further, that he is informed and believes that it is customary for property generally in the counties through which the lines of the Louisville & Nashville Railroad run in Florida to be both returned and assessed at not more than 50 per cent. of its cash value. He reaffirms in his affidavit that the statement contained in the bill in regard to the original actual cost of reproducing the property is the just and proper minimum basis for determining the extent to which said railroad commission can lawfully reduce the revenues of said railroad property. It may be noticed in this connection that from the report made of the Pensacola & Atlantic Railroad to the railroad commission of the state of Florida for the year ending June 30, 1901, the total cost of construction and equipment of said Pensacola & Atlantic Railroad is put down at $3,722,226.18, and that in the annual report of the same railroad to the railroad commission for the year ending June 30, 1902, the same amount is put down as to the total cost of construction, equipment, etc., to that date. I have given much attention to the argument of counsel on this proposition, and have reached the conclusion that while the sworn returns made by high officers of the company of the value of the property for taxation constitute valuable evidence in determining the value of the property for the purpose of effecting rates or charges for freight or passengers, yet they do not constitute an estoppel when the question in controversy is the actual value or cost of reproduction.

In this connection I concur with Judge Morrow in Southern Pacific Company v. Board of Railroad Commissioners (C. C.) 87 Fed. 22, as follows:

"The claim of the answer is that the Central Pacific Railroad Company and the complainant, and each of them, are estopped from claiming that said valuation so given in and to said board of equalization was not the true value of said property, and that the complainant is estopped from having its rates of charges fixed upon any other basis. It does not appear to me that the return of the complainant of a valuation of a part of its property to the board of equalization constitutes an estoppel as to the valuation of that property in an aggregate valuation of the whole property made up in part by the county assessors. Such a return is, however, evidence of the value of the roadway, roadbed, rails, and rolling stock, to be considered in arriving at the actual valuation of the whole property. It is not to be excluded from the case because it does not amount to an estoppel. It is evidence that may be

introduced in support of the allegations of the answer denying the valuation now placed upon the property by the complainant for the purpose of fixing rates for charges."

A like contention is also made in regard to the effect of tax returns of the Pensacola Railroad, owned by the Louisville & Nashville Railroad Company, and operated as the Pensacola Division in the state of Florida. The bill claims that the present actual minimum value of said Pensacola Division is $2,343,930.94, and the exhibits support this claim. In relation to this value of the Pensacola Division, the respondents claim on information and belief that the present actual minimum value of the Pensacola Division on the basis of cost of reproduction is not exceeding, if as much as, $1,000,000; and they further aver that the vice president of the complainant company, on the 28th day of February, 1903, returned to the comptroller of the state of Florida the said Pensacola Division, including main branch, switch and side tracks, lots or parts of lots not leased or rented, and terminal facilities in the state, rolling stock and equipment, at the value of $558,384.00; and, while contending that the complainant is estopped by this return as to the value of the Pensacola Division, the respondents also claim that the Pensacola Railroad, operated as the Pensacola Division, and the Pensacola & Atlantic Railroad, operated as the Pensacola & Atlantic Division, for practical purposes constitute one and the same division, and that to determine the proper rates to be charged by the complainant for passengers and freight on either division the two properties should be considered as one, claiming that in fact they are operated as one, forming a continuous line extending from River Junction, Fla., to Flomaton, Ala., with the same superintendent and division officers, the trains running through with the same train numbers, without any change in crews or equipment.

The pertinency of this contention is more apparent when it is considered that on the Pensacola Division the complainant has been for some years charging passenger fares at three cents per mile, and as to this division the order of the commission will work no change, while on the Pensacola & Atlantic Division, which is from Pensacola to River Junction, running through a distance of 145 miles, through sparsely settled and not very productive territory, the rate for passenger travel has been four cents per mile, and on this division the proposed reduction will principally operate. I have given much attention to this feature of the case, and am disposed to hold that the Pensacola & Atlantic Railroad is owned and operated under a distinct and separate charter, and that its owner, the Louisville & Nashville Railroad Company, is entitled to operate the same as a separate and independent railroad, and cannot be called upon to furnish business from its other properties so as to justify a reduction of rates; and, if the complainant operates this railroad in connection with its other properties so as to do more business and at reduced expense, full consideration is given to the matter when, as here appears, the Pensacola & Atlantic Railroad is given full credit for the increased business and reduced expense. It may be noticed, however, that if both the Pensacola Railroad and the Pensacola & Atlantic Railroad are considered as merged into one property, then if the established minimum cost of

reproduction of the whole, as shown by the bill and exhibits, is taken as the value, the net revenues derived from its operation for 19 years ending June 30, 1902, did not amount to two per cent. of the value.

At present, I do not think it necessary to consider exhaustively the question as to how much per cent. of net revenue, based on the actual value of the railroad and equipment, a railroad company is entitled to earn. I think it will be conceded that as long as the rates are reasonable, and do not unjustly discriminate, the company is entitled to earn some amount; and it seems reasonably clear to me that, if entitled to earn something under the above conditions, it is entitled to earn under the same conditions a compensatory amount equal, at least, to the usual and legal rate of interest in the locality where the railroad is situated. Judging by the business of the past 19 years, in connection with the showing made on this hearing as to present and future business, I conclude that there is no prospect in the immediate future that the net earnings of the complainant's railroads in Florida will approach an amount at all equal to the interest on the value of the said railroads at the usual rate prevailing in Western Florida. The value and the minimum cost of construction of the Louisville & Nashville Railroad properties in the state of Florida, and the management, amount of business, gross receipts, net earnings, cost of operation, accounts, maintenance, and permanent improvements of the said properties, and some other matters discussed, are all set forth in the bill, and, for anything now passed upon, can under proper issues be determined contradictorily while the injunction now authorized on a prima facie showing maintains the status quo. While I am confident that it is proper to grant the injunction, yet as on final hearing the complainant may not be able to maintain its bill, and as I am advised some of the vital questions involved herein have not been fully settled by the Supreme Court, I think it proper, on issuing the injunction, to require a sufficient bond to indemnify all parties in adverse interest in case it shall be determined eventually that the complainant is not entitled to relief in this suit.

Therefore, it is ordered that an injunction pendente lite, as prayed for, issue herein upon the complainant, the Louisville & Nashville Railroad Company, giving bond with surety to be approved by the clerk in the sum of $20,000 in favor of the Railroad Commission of the state of Florida, conditioned to pay on demand to the said commission, in trust for all passengers who have been compelled to pay more than three cents a mile passenger fare on any of the railroads of the Louisville & Nashville Company in the state of Florida, the full amounts of all such charges over the rate of three cents per mile so collected during the pendency of this suit, in case it shall be determined that the complainant is not entitled to relief.