Gregory C. **MOSHER**, Appellant,

v.

John T. **BEIRNE**, Appellee.

No. 17963.

United States Court of Appeals
Eighth Circuit.

March 24, 1966.

Richard M. Stout, St. Louis, Mo., made argument for appellant and filed brief with William H. Crandall, Jr., St. Louis, Mo.

Edward J. Delworth, Jr., Clayton, Mo., made argument for appellee and filed brief with William H. Wyne, Jr., Clayton, Mo.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and MEREDITH, District Judge.

MEHAFFY, Circuit Judge.

Plaintiff, Gregory C. Mosher, brought this civil rights action under 42 U.S.C.A. § 1983, seeking actual and punitive damages against defendant, John T. Beirne, who was Mayor of the incorporated City of Creve Coeur, Missouri.[1]

Jurisdiction was invoked under 28 U.S. C.A. § 1343. The District Court in an opinion published at 237 F.Supp. 684 sustained defendant's motion for summary judgment based on the pleadings, affidavits, depositions and exhibits before it. We affirm.

The facts are fully stated in Judge Harper's opinion but we summarize those pertinent for this opinion.

Plaintiff sought to operate a teenagers' club called "Two Plus Two Club" in the Creve Coeur Country Club building within the corporate limits of the City of Creve Coeur, Missouri. In fact, the club was operated on the night of April 24, 1964 which was prior to an application for a license. Plaintiff defined his business as "providing facilities,

1. 42 U.S.C.A. § 1983:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

music and entertainment for plaintiff's patrons for a fee." After the unlicensed opening plaintiff, on April 27, appeared before the City Board of Aldermen seeking a license. The Board of Aldermen voted unanimously to refuse the application and so notified plaintiff on April 29 on city letterhead signed by defendant.

Despite rejection of his application for license, plaintiff contemplated operating his business on May 1. However, he was notified by city police that arrests would be made if the club was opened. The officers stated they were acting upon orders of the Mayor, who, under Missouri statute, is required to "be active and vigilant in enforcing all laws and ordinances for the government of the city * * *."[2]

The Creve Coeur Country Club is located in a zoned area limiting the operations therein to certain designated types of commercial businesses as well as the operation of private clubs "excepting those the chief activity of which is a service customarily carried on as a business." Zoning Ordinance 225 enacted in 1959, Article II, Section 2.1z, defines a private club as follows:

"A building and area used for social purposes only, including the serving of food and refreshments, whose normal use is limited to members of the club and their guests, and which club does not provide a service customarily carried on as a business."

An additional ordinance fixes the annual fee for "country clubs or private clubs" at $50.00. The Creve Coeur Country Club was licensed under this ordinance.

The District Court based its opinion on two grounds: (1) that the city acted upon ordinances, the validity of which is not challenged, and which do not deprive plaintiff of due process of law; and (2) that because defendant had no power to grant or withhold plaintiff's license, his complained of action was not under "color of law."

On the "color of law" issue, the District Court concluded that defendant as mayor did not have power to grant or withhold licenses, as such action was outside his authority. In his brief, however, plaintiff only complains that defendant's action in "padlocking" his business was arbitrary. In any event, we see no necessity in reaching the "color of law" issue in the absence of either of the requisite elements necessary for recovery under the Civil Rights Act. They are (1) that defendant was acting under "color of law" and (2) that defendant's conduct subjected complainant to deprivation of rights, privileges or immunities secured to him by the Constitution and laws of the United States. Basista v. Weir, 340 F.2d 74 (3rd Cir. 1965); Stiltner v. Rhay, 322 F.2d 314 (9th Cir. 1963); Marshall v. Sawyer, 301 F.2d 639, 646 (9th Cir. 1962); Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963).

Plaintiff does not challenge either the validity of the zoning ordinance or the licensing ordinance, and he has not demonstrated that he has been deprived of any constitutional or statutory right. It may be that the operation of a teenagers' dance hall business at some other location would be lawful, but plaintiff cannot operate such a business in a location within a municipality validly zoned for the operation of a private club "whose normal use is limited to members of the club and their guests, and which club does not provide a service customarily carried on as a business." Plaintiff admitted that he intended to operate the business four nights a week and for a profit.

The rights and necessity for restrictions in municipal zoning ordinances have long been sustained. Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303

2. Mo.Rev.Stat. § 79.200 (1949).
Mo.Rev.Stat. § 79.120 (1949) provides in part that the Mayor shall "exercise a general supervision over all the officers and affairs of the city, and shall take care that the ordinances of the city, and the state laws relating to said city, are complied with."

(1926).[3] It has also been recognized that the conferring of discretionary power upon administrative boards to grant or withhold permission to carry on a trade or business which is the proper subject of regulation within the police power of the state is not violative of rights secured by the Fourteenth Amendment, People of State of New York ex rel. Lieberman v. Van De Carr, 199 U.S. 552, 26 S.Ct. 144, 50 L.Ed. 305 (1905); and that ordinances validly prohibiting the operation of certain businesses without first obtaining municipal permission do not deprive one of his property without due process of law nor deny one the equal protection of the law, Fischer v. City of St. Louis, 194 U.S. 361, 24 S.Ct. 673, 48 L.Ed. 1018 (1904).

 Plaintiff fails to distinguish between civil rights and natural rights. His civil rights do not authorize the operation of a business within a municipality in violation of ordinances enacted under police power and for the welfare of the community. One has to read but little of the history of our civil rights legislation as well as constitutional amendments adopted to ascertain that our constitutional and statutory civil rights are for the protection of persons against discriminatory legislation or treatment. Here, there is no showing whatsoever of discriminatory treatment. There is only a showing that the Creve Coeur Country Club had on occasion permitted the use of its facilities by fraternal, social, civic and charitable organizations.[4] These operations, however, have no bearing on plaintiff's cause of action as there is no suggestion that any of them involved a public dance hall business run for profit. Despite plaintiff's attempts to characterize his operation as a social event, it was a commercial business not permitted under either the zoning or licensing ordinances.

Plaintiff's complaint against the method used in the alleged padlocking of his club borders on being specious. Plaintiff admitted receiving the mayor's letter advising of the denial of his application for a license to operate, but he nonetheless prepared to open his business on May 1. The president of the board of directors of the Creve Coeur Country Club, after discussing the matter with local police, ordered the doors locked on that date. Plaintiff and the employee in charge of the club were advised that if the club opened there would be arrests. The officers could have withheld their warning, awaited the club's opening, and then proceeded to arrest the violators and take necessary steps to close the operation. Rather than do this, they

3. "Building zone laws are of modern origin. They began in this country about 25 years ago. Until recent years, urban life was comparatively simple; but, with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity, and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for, while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world it is impossible that it should be otherwise." 272 U.S. at 386–387, 47 S. Ct. at 118.

4. At the time of trial some person was giving dancing lessons to children during the day, but the latter operation had not at trial date been acted upon by the City Board of Aldermen.

advised of their intention, accomplishing the same purpose without arrest. If anything, plaintiff was benefitted by the so-called "padlocking."

In Raab v. Patacchia, 232 F.Supp. 71 (S.D.Cal.1964), plaintiff's private gambling club was raided by police without a warrant and arrests were made. Suit was brought for damages and injunction under the Civil Rights Act, but the court there properly held that plaintiff was not entitled to damages or an injunction under the Civil Rights Act when his operation was in violation of the zoning and licensing ordinances.

We are not unmindful that formerly the Civil Rights Act was interpreted "broadly only with caution" and within narrow limits, Byrd v. Sexton, 277 F.2d 418, 427 (8th Cir. 1960), and that later decisions such as Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), enlarge the scope of civil rights litigation. We so recognized in this court's opinion in Rhodes v. Meyer, 334 F.2d 709, 712 (8th Cir. 1964). But no decision declares the intent to usurp or severely dilute the proper exercise of police powers by the state and local governments.

The cases cited by plaintiff on the issue here considered are inapposite as none involves violation of a zoning ordinance.[5]

■ Nothing in the material before the District Court reflected any discriminatory action on the part of defendant here, and we cannot presume any. Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1943) and cases there cited.

For the reasons stated, the judgment of the District Court is affirmed.

---

5. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1936); Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964); Progress Development Corp. v. Mitchell, 286 F.2d 222 (7th Cir. 1961); Nelson v. Knox, 230 F.2d 483 (6th Cir. 1956).