**106 FORSYTH CORPORATION d/b/a Paris Theatre, Petitioner,**

v.

**Julius F. BISHOP, In his capacity as Mayor of the City of Athens, et al., Defendants, Jointly and Severally.**

**Civ. A. No. 792.**

United States District Court,
M. D. Georgia,
Athens Division.

Feb. 2, 1972.

D. Freeman Hutton, Atlanta, Ga., Robert Eugene Smith, Towson, Md., R. Bruce Lowry, Athens, Ga., for petitioner.

Joseph J. Gaines, Athens, Ga., for defendants.

BOOTLE, District Judge:

The plaintiff, 106 Forsyth Corporation d/b/a Paris Theatre, sues the Mayor and Board of Aldermen of the City of Athens in their official capacities seeking injunctive relief against the City's proposed conducting of a hearing to determine whether plaintiff's license to operate a movie theater in the City of Athens should be revoked and asks also for a declaratory judgment declaring unconstitutional the provisions of a municipal ordinance providing for such hearing and declaring unconstitutional also a Municipal Zoning Ordinance and the State enabling statute. The parties have been granted a hearing at which they chose to introduce no evidence but to rely upon the pleadings and certain stipulations.

The facts as they appear from the pleadings and said stipulations are as follows. The plaintiff was issued its license to conduct said theater on April 15, 1971. On or about December 14, 1971, the defendants served upon the plaintiff a written notice, and on or about December 29, 1971, an additional notice, which notices are hereinafter discussed.

As will be observed from said notice of December 14, 1971 the Mayor and Council propose to conduct a hearing to determine whether plaintiff's license should be revoked upon the grounds: (1) that on December 6, 1971, plaintiff intentionally exhibited to the general public a specified film which "contained obscene and indecent scenes and acts by nude women and men of sexual intercourse, cunnilingus, and fellatio, which material considered as a whole and applying contemporary community standards predominantly appeals to the prurient interest in nudity, sex, and excretion and is utterly without redeeming social value and transgresses substantially beyond customary limits of candor in describing and representing such matters contrary to the laws of this State as aforesaid" which constituted a "violation of Section 26–2101, Georgia Code", and (2) that on July 10, 1971 the plaintiff exhibited a specified obscene motion picture which "contained obscene and indecent acts of sexual intercourse

between nude men and women, which material when considered as a whole and applying contemporary community standards predominantly appeals to the prurient interest in nudity, sex, or excretion and is utterly without redeeming social value and transgresses substantially beyond customary limits of candor in describing and representing said matters, contrary to the laws of said State as aforesaid" which was "violation of Section 26–2101, Georgia Code." And as appears from said notice of December 29, 1971, the defendants propose to determine at said hearing whether said license should be revoked upon the further ground that the plaintiff is conducting an "Adult Movie House" "within 200 yards of the First United Methodist Church of Athens" as prohibited by an ordinance of the City of Athens adopted July 6, 1971 pursuant to authorization of an Act of the Georgia Legislature approved April 13, 1971.

With respect to proposed grounds number 1 and number 2 plaintiff contends that its license cannot be legally revoked under the procedure proposed by the City in that there has thus far been no judicial determination that either movie complained of is obscene; that to revoke said license by virtue of any determination of obscenity made by the Mayor and Council would be equivalent to the imposition of a previous restraint upon plaintiff with respect to said two films and with respect to any and all other films it might plan to exhibit in the future; that the Mayor and Council is not so legally constituted as to be capable of affording a judicial determination of obscenity and that accordingly its license cannot be legally revoked by the proposed procedure even assuming arguendo that said movies are obscene. And with respect to the third ground of revocation, the plaintiff contends that the state statute under which said ordinance of July 6, 1971 was adopted and the ordinance itself are unconstitutional as written and as applied because they deny equal protection of the law to plaintiff and impinge upon the First

Amendment guarantees of free speech and press and seeks the convening of a three-judge court to grant a declaratory judgment to that effect.

On the other hand, the defendants contend with respect to Grounds One and Two that the power of a municipality to require a license implies the power to revoke it for a sufficient cause; that if, indeed, plaintiff exhibited obscene movies thus violating the criminal statutes of the State of Georgia such exhibition and violation constitute sufficient cause for revocation; that the Mayor and Council is the appropriate body to pass upon the question of revocation and is the appropriate body initially to determine judicially whether plaintiff violated the Georgia statutes by exhibiting obscene films; that no previous restraint is involved but merely a question of revocation of a business license for past conduct and that in this setting the Mayor and Council is authorized to make a judicial determination of obscenity vel non. Similarly, with respect to proposed Ground Three, the defendants contend that they are legally competent to determine whether plaintiff has conducted an "Adult Movie House" within 200 yards of the Methodist Church even though the Georgia statute defines an "Adult Movie House" as a theater which shows for public viewing on a regular, continuing basis so-called "adult films" depicting sexual conduct and defines "sexual conduct" as "acts of masturbation, homosexuality, sodomy, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person be female, breast;" and that said Act of the Legislature is in all respects constitutional.

It was stipulated that with respect to the film of July 10, 1971, four arrests were made and all arrestees were bound over to a trial court. It is not clear whether any or all of these four defendants waived commitment hearings. And with respect to the film of December 6, 1971, it is stipulated that two persons were arrested and both of the arrestees

were bound over by the committing magistrate. As yet, none of these six arrested persons has been tried. It was stipulated also that some defendants were arrested and charged with selling obscene magazines on the premises of plaintiff's theater or in connection therewith and that some of these defendants have been tried and convicted and that their convictions are now on appeal.

## THREE JUDGE COURT NOT REQUIRED

■ A threshold matter is whether there exists any substantial question as to the constitutionality of the Georgia statute, so as to require the convening of a three-judge court. We are convinced that this contention of plaintiff is so insubstantial as not to warrant a three-judge court. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Hurtado, etc. v. U. S. A., 5 Cir., 1971, 452 F.2d 951.

■■ The power and necessity for state legislatures and municipal governments to impose restrictions through zoning laws and ordinances is no longer subject to question. Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Goldblatt v. Town of Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); Mosher v. Beirne, 357 F.2d 638 (8th Cir. 1966); Wallach v. City of Pagedale, Missouri, 359 F.2d 57 (8th Cir. 1966). A zoning statute or ordinance should not be declared unconstitutional unless its "provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Euclid, 272 U.S. at 395, 47 S.Ct. at 121. And the exercise of police power in this regard must be upheld if any state of facts either known or which could be reasonably assumed affords support for it. United States v. Carolene, 304 U.S. 144, 154, 58 S.Ct. 778, 82 L.Ed. 1234, 1242 (1938); Goldblatt, 369 U.S. at 596, 82 S.Ct. 987. As was said in Mosher, supra, 357 F.2d at 641:

"Plaintiff fails to distinguish between civil rights and natural rights. His civil rights do not authorize the operation of a business within a municipality in violation of ordinances enacted under police power and for the welfare of the community. One has to read but little of the history of our civil rights legislation as well as constitutional amendments adopted to ascertain that our constitutional and statutory civil rights are for the protection of persons against discriminatory legislation or treatment. Here, there is no showing whatsoever of discriminatory treatment."

And as was said in Texas Co. v. City of Tampa, Fla., 100 F.2d 347, 348 (5th Cir. 1938):

"Moreover, the mere fact that only one party operating a business is affected by a regulation designed to localize the operation of such business in a certain district in the city does not show arbitrary and unreasonable or unjust discrimination in violation of organic rights."

Motion picture theaters, like filling stations (Texas Co., supra) and whiskey stores (Manor v. City of Bainbridge, 136 Ga. 777, 71 S.E. 1101 (1911)) are not immune from regulation under the police power. As was said in Chemline, Inc. v. City of Grand Prairie, 364 F.2d 721, 726 (5th Cir. 1966):

"the right to disseminate motion pictures is not absolute. It does not mean that any motion picture can be distributed at any time, at any place, and under any circumstances."

The plaintiff would seem to argue that First Amendment rights as they attach to commercial movies are so fundamental as to be immune from valid regulation under the police power. We reject that contention, particularly where, as here, the restraint upon such movies is relatively minor and the public interest to be protected is substantial. Chemline, supra, at 726.

It ill befits plaintiff to question the legislative judgment that adult movie

theaters are subject to zoning regulations and to being classified differently from ordinary movie theaters since plaintiff itself has resorted to classification by restricting exhibition to adults only. The Legislature and Mayor and Council are going a short step further than plaintiff by restricting the locale in which the adult theater can operate. The statute and the ordinance pursuant thereto did not prohibit the showing of adult movies; they only regulated the place of the showing. These legislative bodies may have, and doubtless did, conclude that these types of shows are undesirable in the prohibited locations in that (1) the type of clientele which may be attracted would be inimical to the best interests of the institutions and places sought to be protected, (2) although children are said to be barred they should be freed from the constant reminder that something is taking place in their midst which they must not see, and (3) there is always the possibility that self-imposed discipline may not be effective. Such reasoning has long been sufficient to justify zoning with respect to alcoholic beverages. Whatever the reasoning was, "debatable questions as to reasonableness are not for the courts but for the Legislature . . . ." *Goldblatt, supra,* 369 U.S. at 595, 82 S. ct. at 990.

MAYOR AND COUNCIL AUTHORIZED TO MAKE JUDICIAL DETERMINATION OF OBSCENITY VEL NON AT ADVERSARY HEARING

The license ordinance of the City of Athens, as amended June 22, 1971, contains this provision:

"Section 417. The Mayor and Council of the City of Athens shall have the right, after notice and hearing, to revoke any business license issued hereunder on the following grounds:

" * * *

"2. (b) Violation of a law of the State of Georgia which affects the public health, welfare and safety and which violation occurred as a part of the main business activity licensed and not merely incidental thereto."

Section 26–2101 of the Code of Georgia provides as follows:

"26–2101. Distributing obscene materials.—(a) A person commits the offense of distributing obscene materials when he sells, lends, rents, leases, gives, advertises, publishes, exhibits, or otherwise disseminates to any person any obscene material of any description, knowing the obscene nature thereof, or who offers to do so, or who possesses such material with the intent so to do. . . .

"(b) Material is obscene if considered as a whole, applying community standards, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and utterly without redeeming social value and if, in addition, it goes substantially beyond customary limits of candor in describing or representing such matters. Undeveloped photographs, molds, printing plates and the like shall be deemed obscene notwithstanding that processing or other acts may be required to make the obscenity patent or to disseminate it.

"(c) Material, not otherwise obscene, may be deemed obscene under this section if the distribution thereof, or the offer to do so, or the possession with the intent to do so is a commercial exploitation of erotica solely for the sake of their prurient appeal.

"(d) A person convicted of distributing obscene material shall for the first offense be punished as for a misdemeanor, and for any subsequent offense shall be punished by imprisonment for not less than one nor more than five years, or by a fine not to exceed $5,000.00, or both."

With respect to proposed ground 3 as has been noted the Georgia Legislature by Act approved April 13, 1971 authorizes the governing authority of a munici-

pality to enact ordinances restricting the operation of adult movie houses so as to prohibit their being operated within 200 yards of any church, defining adult movie houses as hereinabove stated. Thereafter, and pursuant to said legislative authorization, the Mayor and Council of the City of Athens adopted an ordinance on July 6, 1971 prohibiting the operation of an adult movie house within 200 yards of any church.

After this complaint was filed on December 20, 1971 seeking a temporary restraining order with respect to the hearing by the Mayor and Aldermen scheduled for the evening of the same date, counsel agreed that said hearing would be deferred pending a decision by this court. And at the hearing on the application for preliminary injunction held on December 29, 1971 it was agreed that said hearing would constitute a final hearing and that since the year was about to end and if it should happen that defendants in normal course issued a renewal of plaintiff's license prior to this court's decision said issuance would be without prejudice to the rights of any party to this case so that in effect the hearings by the Mayor and Council pursuant to said notices, if said hearings are permitted by this court, shall be with respect to such renewed license.

■ Inasmuch as plaintiff's claimed rights fall under the broad panoply of freedom of expression, we pretermit the question whether this court would be justified in applying the doctrine of abstention.[1] We pretermit also the question whether the proposed hearing before the Mayor and Alderman is such

a "proceeding(s) in a state court" as is contemplated by 28 U.S.C.A. § 2283[2] and thus completely immune from federal injunctive interference by virtue of said statute as recently interpreted in Atlantic Coast Line R. Co. v. Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). Assuming without deciding that Machesky v. Bizzell, 414 F.2d 283 (5th Cir. 1969) and Sheridan v. Garrison, 415 F.2d 699 (5th Cir. 1969) are left intact by *Atlantic Coast Line R. Co.* case, *supra*, they would not require injunctive relief in the case at bar. In the instant case we do not have for protection paramount "public interests" or public rights like the right to full dissemination of public expression on public issues as in *Machesky*. Rather, we have the right of commercial exploitation of a film as in Carter v. Gautier, 305 F.Supp. 1098 (M.D.Ga.1969) and in Gable v. Jenkins, 309 F.Supp. 998 (N.D. Ga.1969). Although expression by means of motion pictures is included within the free expression or free press guarantee of the First and Fourteenth Amendments, the right of commercial exploitation of a film does not represent a great public interest, but amounts to a private right. Nor do we have the element of bad faith as in Sheridan v. Garrison, *supra*, or its remote forebear Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

With these pretermissions behind us we assume jurisdiction and consider the complaint on its merits.

■■ We agree that just as there can be no massive seizure of allegedly obscene materials for destruction with-

---

1. The Court of Appeals for the Second Circuit, in Reid v. Board of Education, 453 F.2d 238, December 14, 1971, 40 L.W. 2410, stated: "The last two Terms of the Court have witnessed the rejuvenation of the full implications of the Pullman (abstention) doctrine," citing Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) and Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971).

2. In Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 225, 29 S.Ct. 67, 69, 53 L.

Ed. 150, 158 (1908), Mr. Justice Holmes, for the Court, said: "We shall assume . . . that some of the powers of the commission (the State Corporation Commission) are judicial, and we shall assume, without deciding, that, if it was proceeding against the appellees to enforce this order and to punish them for a breach, it then would be sitting as a court and would be protected from interference on the part of the courts of the United States." See also Louisville & N. R. Co. v. Brown, 123 F. 946, 948 (5th Cir. 1903).

out a prior adversary type hearing and determination of obscenity, Carter v. Gautier, *supra*, and cases cited, there can be no valid revocation of a business license for having exhibited an obscene film without such prior hearing and determination. It is clear, however, that defendants do not propose such illegal revocation. On the contrary, they propose to afford the plaintiff just such hearing as the Constitution requires, that is, a prior adversary judicial hearing. Carter v. Gautier, *supra*, and cases cited. It was stated in Gable v. Jenkins, 309 F.Supp. 998, 1001 (N.D.Ga.1969): "There is proper procedure existing in the Georgia law that can achieve constitutional standards, i. e., a prior adversary judicial proceeding before the seizure of the allegedly obscene items.[3]

"3. As examples, the following are presented: When a search warrant is applied for to seize the alleged obscene materials, the person possessing the same could be given notice of the intent to apply for the search warrant, and be given an opportunity to be present at such time, and present evidence in opposition to the issuance of the search warrant. Or an order to show cause why the alleged obscene film is not obscene could be served on the possessor, or a petition to have the film declared contraband, and subject to destruction could be served on the possessor."

The notice served upon the plaintiff shows that the proposed hearing will in all respects conform to the requirements of the City Charter and of the Constitution of the United States. Specific notice of the particular charges is given. A "full hearing" is promised with "full opportunity to present any legal evidence" with the aid of plaintiff's counsel. If, as is indicated in Gable v. Jenkins, *supra*, a hearing before a Justice of the Peace, who may not be, and frequently is not, an attorney, in connection with an application for a search warrant constitutes the prior judicial hearing required, there appears no reason why such a hearing cannot be held before the Mayor and ten Aldermen, each of whom is, by the City Charter, constituted an "ex officio . . . Justice of the

Peace so far as to enable any one of them to issue warrants for offenses committed within the corporate limits of the City of Athens, to suppress riots or breaches of the peace, arrest, confine, commit or bind over offenders against the laws of this State, to answer for such offense before the proper tribunal." Georgia Laws, 1872, page 127. Any doubt as to this is laid to rest by Hornsby v. Allen, 326 F.2d 605, 608 (5th Cir. 1964) holding that a municipal governing body in granting or denying a business license "acts as a judicial body." In elucidating the point, the court stated:

"At the outset, we note our disagreement with the district court's classification of the challenged actions as purely those of a legislative body; we do not conceive the denial of an application for a license to be an act of legislation. Although there is disagreement on the matter, see 73 C.J.S. Public Administrative Bodies and Procedure, § 71, at 398, we prefer the view that licensing proper is an adjudicative process. Thus when a municipal or other governmental body grants a license it is an adjudication that the applicant has satisfactorily complied with the prescribed standards for the award of that license. Similarly the denial of a license is based on an adjudication that the applicant has not satisfied those qualifications and requirements. On the other hand, the prescription of standards which must be met to obtain a license is legislation, since these standards are authoritative guides for future conduct derived from an assessment of the needs of the community. A governmental agency entrusted with the licensing power therefore functions as a legislature when it prescribes these standards, but the same agency acts as a judicial body when it makes a determination that a specific applicant has or has not satisfied them.

"Since licensing consists in the determination of factual issues and the

application of legal criteria to them—a judicial act—the fundamental requirements of due process are applicable to it."

We are confirmed in this view by the fact that in the event of an adverse decision by the Mayor and Aldermen the plaintiff would be entitled to obtain a review thereof by certiorari to the appropriate superior court and to obtain from such court "a supersedeas of the judgment until the final hearing in the superior court." Ga.Code, Title 19–101, 19–203, 19–213.[3] In City of Cedartown v. Pickett, 193 Ga. 840, 842, 20 S.E.2d 263, 265 (1942), it is stated:

"Although certiorari is not an appropriate remedy to review or obtain relief from the judgment, decision, or action of an inferior. judicatory or body rendered in the exercise of legislative, executive, or ministerial functions, such a writ does lie for the correction of errors in decisions by municipal corporations, courts or councils, like other inferior judicatories, when rendered in the exercise of their judicial powers."

See also Attaway v. Coleman, 213 Ga. 329, 99 S.E.2d 154 (1957).

The holding in *Hornsby* is not new to Georgia Law. Georgia Code Section 69–301 expressly recognizes that Municipal Corporations may exercise judicial powers. Sometime between 1854 and 1856 the Mayor and Council of the City of Rome, Georgia refused to issue a liquor license and were sued for damages. The trial court dismissed the action and in reviewing the case the Supreme Court of Georgia asked:

"Can an action in any form be maintained against a municipal corporation for an error in judgment, only when exercising judicial functions . . . . ?" And answered, "We think not." Duke v. Mayor & City of Rome, 20 Ga. 635 (1856).

## NO PRIOR RESTRAINT

No violation of the constitutional right against prior restraint is threatened. The films complained of have been exhibited without any prior censorship. A major question at the hearing will be whether the films already shown were obscene. The landmark previous restraint case, Near v. Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), recognizes that a publisher cannot be restrained by a prior order from publishing what he desires to publish, but in no sense exonerates the publisher from liability for what he has published. The case quotes Blackstone as follows:

"The liberty of the press is indeed essential to the nature of a free state; but this consists in laying no *previous* restraints upon publications, and not in freedom from censure for criminal matter when published. Every freeman has an undoubted right to lay what sentiments he pleases before the public; to forbid this, is to destroy the freedom of the press; but if he publishes what is improper, mischievous or illegal, he must take the consequence of his own temerity,"

and quotes further Chief Justice Parker in Com. v. Blanding 3 Pick. 304, 313, 15 Am.Dec. 214, as follows:

"Besides, it is well understood, and received as a commentary on this provision for the liberty of the press, that it was intended to prevent all such *previous restraints* upon publications as had been practiced by other governments, and in early times here, to stifle the efforts of patriots towards enlightening their fellow subjects upon their rights and the duties of rulers. The liberty of the press was to be unrestrained, but he who used it was to be responsible in case of its abuse."

The purpose of the proposed hearing is not to place upon plaintiff any previous restraint with respect to any films it

---

3. Moreover defense counsel stated in open court that in the event of a ruling in this case favorable to the Mayor and Council, the defendants would withhold actual revocation until plaintiff has had full opportunity to exhaust all appellate review.

may plan to show, but to call plaintiff to account and to hold the plaintiff responsible for its alleged past abuses of its unquestioned right of immunity from previous restraint. Of course, if its license is revoked for twelve months (the maximum period of revocation authorized by the city ordinance) the result will be that it cannot do business in the City of Athens during such revocation period. The non-exhibition of films obscene or non-obscene during said period would not be the result direct or indirect of previous restraint, but would result incidentally from past abuses of immunity from previous restraint just as a person convicted and imprisoned for criminal libel might be incidentally and indirectly prevented and thus practically restrained from any and all publications during the period of incarceration.

## ORDINANCE SECTION 417 NOT UNCONSTITUTIONAL

■ We have carefully considered all of plaintiff's complaints against Section 417 of the Municipal Ordinance authorizing after notice and hearing revocation of a public license on the ground of "violation of a law of the State of Georgia which affects the health, welfare and safety and which violation occurred as a part of the main business activity licensed and not incidental thereto" and are convinced that said ordinance is not void for overbreadth, or for failing to provide standards to guide in the revocation, or for vagueness, or as imposing "prior restraint", or as precluding the right of judicial review, or for any other reason alleged. We think the statute contains sufficient guidelines specifically outlining those grounds for revoking a license and that the ordinance sufficiently indicates to both Mayor and Aldermen and any licensee what conduct may result in a revocation of a license, namely, any violation of a law of the

State of Georgia, meaning any valid enactment by the Legislature approved by the Governor which affects the public health, welfare and safety and which violation occurred as a part of the main business activity licensed and not merely incidental thereto. As above indicated, there is a valid Georgia statute making it a criminal offense to exhibit obscene material and also a valid Georgia statute making it a criminal offense to operate an adult movie house within 200 yards of any church. All persons are charged with knowledge that such statutes exist and it could hardly be contended that a violation of such statutes does not affect public health, welfare and safety. Moreover, the ordinance not only specifies what conduct shall constitute grounds for revocation, but provides constitutional due process through notice and hearing.

## CONCLUSION

Accordingly, a declaratory judgment is hereby rendered that the provisions of Section 417 of the license ordinance of the City of Athens and the zoning statute complained of are constitutionally valid facially and as applied to businesses like plaintiff's involving the operation of a movie theater.

This court finds and concludes further that no constitutional rights of plaintiff are being violated or threatened by the action proposed to be taken by the Mayor and Aldermen in providing a full hearing to plaintiff as specified in said notices, it being presumed that the defendants as public officials will do their duty and comply with all requirements of the law, and accordingly all of the prayers of the complaint are hereby denied.

This memorandum opinion is intended to suffice as findings of fact and conclusions of law.