**EAGLE BOOKS, INC., dba Adult Book Store, aka Ogden Books, and Hersel Richardson, Jr., Plaintiffs,**

v.

**Joe RITCHIE, in his official capacity as Chief of Police of Ogden, Utah, Robert L. Newey, in his official capacity as County Attorney for Weber County, Utah, A. Stephen Dirks, in his official capacity as Mayor of Ogden, Utah, Robert DeBoer, Roger Grant, John B. Arrington, Willard E. Cragun, and Glen Mecham, each in his official capacity as Ogden City Council member and Jack Richards, in his official capacity as Corporation Counsel for the City of Ogden, Utah, Defendants.**

No. NC–77–0043.

United States District Court, D. Utah, N. D.

Jan. 6, 1978.

Arthur M. Schwartz, P. C., and Neil E. Ayervais, Denver, Colo., Stephen R. McCaughey, Salt Lake City, Utah, for plaintiffs.

Timothy W. Blackburn, Asst. Corp. Counsel, Ogden, Utah, for defendants.

## ORDER GRANTING PRELIMINARY INJUNCTION

ALDON J. ANDERSON, Chief Judge.

On September 20 and November 9, 1977, plaintiffs filed motions for preliminary injunctive relief. The relief requested is the enjoining of defendants from enforcing against plaintiffs the terms of Ogden City Ordinance No. 7–77, which provides for the revocation of the license of a business upon the conviction of that business, or any offi-

cer, employee or partner thereof, of any violations of Utah's anti-pornography laws, Utah Code Ann. §§ 76–10–1201 et seq.[1] A similar request by plaintiffs was denied by this court on July 8, 1977, on the grounds that a proceeding was then pending in a Utah state court and that the factual showing at that time was insufficient to sustain a finding of any of the exceptions set forth in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) that would allow the court to interfere with and enjoin the ongoing state proceeding. Since that time, however, the circumstances regarding the pending state proceedings have changed, the plaintiffs have simplified their request for relief, and the court has received further evidence in the matter. It is therefore the court's opinion that the previous order of abstention should be reconsidered and consideration given to plaintiffs' modified claim for injunctive relief.

## BACKGROUND

On June 24, 1977, the present defendants filed an amended complaint in the Second Judicial District Court of Weber County, Utah, containing two causes of action and demanding that the business of the present plaintiffs be enjoined from operating pursuant to their two causes of action, to-wit: first, that the business of plaintiffs was a public nuisance under Utah Code Ann. §§ 76–10–801 et seq. and 76–10–1210(3); and, second, that plaintiffs' business was operating without a license to do business, since its license had previously been revoked pursuant to Ogden City Ordinance No. 7–77. On July 5, 1977, plaintiffs filed the present action in this court, pursuant to 42 U.S.C. § 1983, seeking injunctive relief

preventing defendants from enforcing Ordinance No. 7–77 against them, on the ground that the said ordinance was unconstitutional. It was at this point that this court denied plaintiffs' request on the above-stated grounds and with the proviso that the denial was "subject to renewal should it become apparent that the constitutional violations complained of will not be reached in the currently pending state court proceedings." On October 20, 1977, Judge Ronald O. Hyde entered a memorandum decision in the state case denying the injunctive relief prayed for by Ogden City. In the course of his opinion, however, Judge Hyde expressly stated that he did not reach the question of the constitutionality of the ordinance since "The question of constitutionality . . . does not appear to be properly before this Court in this case. It is not necessary to the decision and a ruling thereon would at best be advisory only." In approximately this same time period, plaintiffs renewed their motions and pursued in earnest their claims before this court and their continued requests for injunctive relief. .

Prior to the inception of this action the Ogden City Police issued citations to plaintiffs and arrested plaintiffs' employees for operating plaintiffs' bookstore in violation of Ordinance No. 7–77, and such citations and arrests have continued on an almost daily basis up to the present date. Plaintiffs allege that these actions have taken place at the direction of Ogden City Councilmen despite warnings that the ordinance is unconstitutional, and that the arrests have occurred even though the arrests are unnecessary and are designed solely to force the closing of plaintiffs' bookstore.

---

1. Ogden City Ordinance No. 7–77 provides in pertinent part that:

"The city council, upon notice and hearing as provided in this chapter, may revoke any license issued by the City upon the conviction of the license or any officer, employee or partner of the licensee of any violations of the Utah State law as it now exists or may hereafter be amended . . . In addition, the city council may refuse to issue a license of any kind to that licensee, its officers, partner or the convicted employee in the event of

such conviction of the license, his officers, employees or partner for a period of not to exceed one (1) year after that conviction." Moreover, the ordinance provides that: "The city council may, after notice and hearing as herein provided, refuse to issue any City Business License for any business at the premises where a violation of the above-mentioned state law concerning pornographic and harmful materials and performances has occurred for a period of one (1) year after such conviction." (Emphasis added.)

This court has been informed by counsel for the present parties that all the criminal cases pending against the bookstore and its employees as a result of the citations and arrests for doing business without a license have been set by way of stipulation for decision by Judge Taylor of the Ogden City Court sometime in the near future. The court has also been informed that the only issue before the City Court is the constitutionality of Ordinance No. 7–77.

## ABSTENTION

In view of the pending appeal by the City from Judge Hyde's decision and the pending criminal matters in the City Court which implicate the constitutionality of Ordinance No. 7–77, the initial question that must be resolved by this court is whether the court should refuse to take action in the present action because of the doctrine of equitable restraint as set forth in *Younger v. Harris, supra,* and as embellished by subsequent Supreme Court decisions. Under that doctrine, ". . . a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury." *Samuels v. Mackell,* 401 U.S. 66, 69, 91 S.Ct. 764, 766, 27 L.Ed.2d 688 (1971). Thus, whether a state action is pending is critical to the application of *Younger* and its progeny.

It is clear that prior state proceedings involving the present parties and the issue of the constitutionality of Ordinance No. 7–77 are now pending before state tribunals and, in light of plaintiffs' prayer that this court enjoin defendants from enforcing the ordinance against plaintiffs on the ground of its unconstitutionality, it would appear that this is a classic case for the application of the *Younger* doctrine and that this court should therefore refrain from taking action in the case. However, in their memorandum of November 22, 1977, and in oral argument had before the court on December 13, 1977, plaintiffs have clarified their request for relief and have represented that they are *not* asking this court to enjoin the actual pending proceedings in the state courts but are merely asking the court to grant an injunction against *future* enforcement of the challenged ordinance. That is, the plaintiffs claim that the relief sought here is entirely *prospective* in nature and that therefore the *Younger* doctrine and considerations are inapplicable and do not prevent this court from acting.

In support of their claim, plaintiffs cite the case of *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). The primary plaintiff in *Wooley* had been convicted of three violations of a particular state statute and had chosen not to appeal his convictions. The plaintiffs then brought an action in federal court pursuant to 42 U.S.C. § 1983 and sought injunctive relief against further arrests and prosecutions under the state statute. In upholding the federal · district court's granting of plaintiffs' request and in response to defendants' argument that the *Younger* doctrine applied since plaintiffs had failed to appeal the criminal convictions, the Supreme Court held that the federal court had properly exercised jurisdiction in the matter and made the following observations:

Here . . . the suit is in no way "designed to annul the results of a state trial" since *the relief sought is wholly prospective, to preclude further prosecution under a statute alleged to violate [appellees'] constitutional rights.* [Maynard] has already sustained convictions and has served a sentence of imprisonment for his prior offenses. He does not seek to have his record expunged, nor to annul any collateral effects those convictions may have, e. g., upon his driving privileges. The Maynards seek only to be free from prosecutions for future violations of the same statutes. *Younger* does not bar federal jurisdiction.

430 U.S. at 711, 97 S.Ct. at 1433 (emphasis added). It is this distinction as to *prospective* relief upon which the present plaintiffs rest much of their argument.

Although there are significant factual differences between *Wooley* and the

present action,[2] the court feels that the general teachings and spirit of *Wooley* are persuasive in the present context. First, as the Court reiterated in *Wooley*, "*Younger* principles aside, a litigant is *entitled* to resort to a federal forum in seeking redress under 42 U.S.C. § 1983 for an alleged deprivation of federal rights." 430 U.S. at 710, 97 S.Ct. at 1433 (emphasis added). Even though this court has been somewhat puzzled as to why plaintiffs are seeking injunctive relief in this court while the substantive issues are being litigated in the state courts,[3] it is clear that plaintiffs are entitled to so seek relief if they otherwise meet the proper jurisdictional criteria, and that this court is not to refuse to exercise its jurisdiction in all but exceptional cases. Here, "*Younger* principles aside," plaintiffs appear to be entitled to proceed in this court. Second, with regard to the *Younger* principles, plaintiffs are not asking this court to enjoin the ongoing state prosecutions and proceedings, and it is the opinion of this court that under the circumstances presented its granting of plaintiffs' request for relief would not unduly interfere with, set aside or "annul" a state proceeding or otherwise disturb the notion of "comity" that underlies the *Younger* doctrine. *See, e. g., Younger v. Harris, supra,* 401 U.S. at 43–46, 91 S.Ct. 746; *Wooley v. Maynard, supra,* 430 U.S. at 710–11, 97 S.Ct. 1428. Thus, the court concludes that it should act in the present action and grant plaintiffs the prospective relief that they seek.

In so doing, however, the court expresses emphatically that it in no way desires, nor should this opinion in any way be construed, to impinge upon or influence the proceedings that are taking place and will take place in the state courts. As indicated above and as is discussed below, this court feels that it presently has a duty to act and grant relief in view of the circumstances of this case. To the extent that the court's decision could be construed to reflect upon plaintiffs' likelihood of success on the question of the constitutionality of Ordinance No. 7–77, the court notes that it has not prejudged this issue and that it is merely acting under the notion that a serious question is presented by the ordinance, in that any system that implies a prior restraint of expression comes to the court "bearing a heavy presumption against its constitutional validity." *See, e. g., New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Surely the state courts are aware of this presumption, and this court's recognition of the presumption will not be a communication to the courts that this court has formed an opinion on the constitutionality of Ordinance No. 7–77. As this court has previously recognized, it has confidence in the integrity and ability of city and state courts involved in this case to handle the constitutional issues that have been presented to them.

**2.** The following distinctions are readily apparent: First, in *Wooley* there were not state court proceedings pending at the time the federal action was commenced, the convictions entered by the state courts were final and, consequently, there was no possibility of impingement upon any ongoing state court proceedings as is the case here (see discussion below); second, the district court in *Wooley* had been asked for declaratory relief in addition to injunctive relief, and thus it had greater possession of a "whole" case; and, third, as opposed to the situation here, in *Wooley* the question of the constitutionality of the state statute was not litigated in the state court proceedings [*Maynard v. Wooley,* 406 F.Supp. 1381, n. 6 (D.N.H.1976)]. Thus, *Wooley* is not necessarily controlling in the present action.

**3.** The state proceedings are criminal in nature and the City Court is not empowered to provide plaintiffs with injunctive relief. *Compare* Utah Code Ann. §§ 78–4–14 and 16 *with id.* § 78–3–4. Plaintiffs also have indicated that they have sought relief in this court because the method of enforcing First Amendment rights in Utah through the Fourteenth Amendment has been rendered somewhat uncertain by the decision of the Utah Supreme Court in *Utah v. Phillips,* 540 P.2d 936 (Utah 1975). The court notes that plaintiffs have represented to the court that they intend to litigate fully the constitutional issues presented through the state court system rather than to return here for substantive relief. A resolution there may obviate any further responsibility this court would have in this case. *See, e. g., Fisher v. Civil Service Com'n of Salt Lake City, Utah,* 484 F.2d 1099 (10th Cir. 1973).

## PROPRIETY OF INJUNCTIVE RELIEF

This court is of the opinion that not only is there an absence of factors in the present case that would preclude it from acting, but that there is also the presence of special circumstances which compel the court to grant plaintiffs relief from further citations and arrests under Ordinance No. 7–77 pending a determination of its constitutionality. Weighed against the possible repercussions to the notion of comity that could result from this court's acting at this time is the importance of the First Amendment values that are implicated in the present action and the deleterious effect that defendants' actions may have upon plaintiffs' presumptive First Amendment rights.

In this regard the instant case presents some rather unique and troublesome circumstances. The uniqueness stems from the status of the state proceedings and the fact that plaintiffs are precluded from obtaining injunctive relief from the City Court, the only state court before which the question of constitutionality is pending. This appears to be true for three reasons: first, the cases pending there are criminal cases rather than civil cases; second, the City Court has no power to grant injunctive relief of the nature sought in any event; and, third, neither party has requested such relief. Because there is thus no relief forthcoming from the state courts, this court feels constrained to respond in order to protect plaintiffs' presumptive First Amendment rights.

The troublesome aspect lies in the circumstances under which defendant city enacted and enforced this ordinance. Since the Supreme Court of the United States has held that obscene materials are not protected by the First Amendment, numerous convictions for selling obscene materials would naturally antagonize many citizens who would just as naturally urge the city officials to act. The difficulty here is that persons seeking to create and enforce laws against the sale of pornographic materials must take care not to "prune the tree of liberty" by adopting those measures and taking those steps which will tend to run roughshod over First Amendment rights of freedom of expression in the process of enforcement of those laws. It is apparent here that there were efforts made to take the strongest measures available within the framework of city government to shut down plaintiffs' bookstore and to put plaintiffs out of business. For example, from the minutes of the Ogden City Council meeting of June 9, 1977, which are on file herein, it appears that defendant and city councilman DeBoer stated: " . . . the City is just as determined to see this business is closed as [plaintiffs' attorney] is in seeing that it remains open." Although defendants' counsel, Mr. Blackburn, took issue with plaintiffs' counsel during oral argument of December 13, 1977, regarding their allegation, plaintiffs allege that they can prove and, in oral argument, plaintiffs offered some evidence to the effect that Ordinance No. 7–77 was originally enacted in haste and without much opportunity for the city to be advised with respect to its constitutionality. There is reason to believe a primary purpose was to close down plaintiffs' business. As discussed earlier, since the enactment of the ordinance defendants have issued citations to plaintiffs and have arrested plaintiffs' employees on nearly a daily basis.[4] Finally, according to the Stipulation of Fact of July 11, 1977, on file in the companion case of *Eagle Books, Inc. v. Ritchie,* 455 F.Supp. 64 (D.C.1978), that is also before this court, the City of Ogden has on several occasions conducted mass seizures of plaintiffs' merchandise and has retained the merchandise, all in an apparent

---

4. Although this may appear to be harassment on the part of defendants, it must be noted that the ordinance itself provides that the penalty for operating without a license is a misdemeanor, "with each day of such activity constituting a separate offense." Moreover, with respect to the citations and arrests subsequent to Judge Hyde's decision of October 20, 1977, it must also be noted that Judge Hyde arguably approved defendants' actions by rejecting the City's request for injunctive relief on the ground that: "The ordinance carries its own sanctions for violation—a daily misdemeanor."

effort to cripple plaintiffs' ability to continue operating its business.

The court is fully aware of the deep and emotional controversy that surrounds the operation of so-called adult bookstores and theatres such as plaintiffs, and assumes that the actions on the part of defendants are well intentioned and based on defendants' sincere beliefs that such actions are justified and reasonable under the circumstances as they perceive them to be. Nevertheless, the simple fact remains that the operation of plaintiffs' business, a bookstore, and the materials which it sells, are entitled to a presumption of being protected under the First Amendment until the contrary is properly established. The effect of the enforcement of Ordinance No. 7–77 under present circumstances would preclude the sale of any materials by plaintiffs whether or not the materials have been determined to be obscene and, to that extent, it appears to be similar to other ordinances which have been struck down as a "prior restraint" of presumptively constitutionally protected material. *See, e. g., Perrine v. Municipal Court,* 5 Cal.3d 656, 97 Cal.Rptr. 320, 488 P.2d 648 (1971). *But see 106 Forsyth Corp. v. Bishop,* 362 F.Supp. 1389 (M.D.Ga.1972) *aff'd* 482 F.2d 280 (5th Cir. 1973) *cert. denied,* 422 U.S. 1044, 95 S.Ct. 2660, 45 L.Ed.2d 696 (1975). And as indicated earlier, systems such as the one set forth in the ordinance in question bears "a heavy presumption against its constitutionality." *New York Times Co. v. United States, supra.* The circumstances herein demonstrate that unless this court acts, plaintiffs and their employees will suffer immediate and irreparable harm. Plaintiffs must be afforded the benefit of their First Amendment rights untrammeled by coercive, harassment oriented actions in an effort to close them down, while such an important issue as the constitutionality of the ordinance is determined. Therefore, it is the opinion of this court that until the constitutionality of the ordinance is decided any further citations issued to, any further arrests of, or any further proceedings brought against plaintiffs pursuant to the ordinance would accomplish no useful, legitimate purpose, but would serve only to chill the exercise of plaintiffs' First Amendment freedoms. This the court cannot allow. Wherefore,

IT IS HEREBY ORDERED that a preliminary injunction be granted plaintiffs. Pursuant thereto defendants are prohibited from issuing any further citations, making any further arrests or commencing any further proceeding or undertaking any other actions against plaintiffs pursuant to Ogden City Ordinance No. 7–77. This order is to be effective from receipt of a copy of the order by defendants, or actual notice of the same, until the time a final judicial determination is made regarding the constitutionality of said ordinance, or until the present action shall otherwise terminate.