**ALADDIN'S CASTLE, INC.**

v.

**The CITY OF MESQUITE.**

No. CA 3–77–0194–C.

United States District Court,
N. D. Texas,
Dallas Division.

June 29, 1977.

Louis P. Bickel, Bickel & Case, Glenn A. Portman, Johnson, Bromberg, Leeds & Riggs, Dallas, Tex., for plaintiff.

Elland Archer, Mesquite, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Aladdin's Castle, Inc. (hereafter, A.C.I.), a corporation engaged in the business of owning and managing coin-operated amusement centers in various sections of the nation, brought this action seeking declaratory and injunctive relief from the enforcement of an allegedly unconstitutional ordinance of the City of Mesquite which (1) prohibits issuance of a license for a coin-operated amusement center to anyone having a "connection with criminal elements," and (2) restricts admission to coin-operated amusement centers to individuals age 17 or above. On February 11, 1977, this Court entered a temporary restraining order enjoining enforcement of such ordinance. After an evidentiary hearing, a preliminary injunction was entered on March 21, 1977. On June 10, 1977, the case was tried to the Court on the merits. For the reasons set forth below, this Court is of the opinion that those provisions of the ordinance purporting to deny a license to applicants who have a "connection with criminal elements" are unconstitutionally vague and overbroad. We are unable to say, however, that the challenged age restriction raises any Federal constitutional issue.

This action arises from the on-again, off-again legislative activity of the Mesquite City Council. In 1973, the Council enacted Ordinance No. 1103 which required licenses for coin-operated amusement establishments and limited access to such establishments to individuals 17 years of age or above. Individuals under age 17 were permitted access only if accompanied by parent or guardian. In 1976, A.C.I., through its president, approached officials of the City with respect to its interest in opening an amusement center at the Town East Mall within the city limits of Mesquite. A.C.I. owns and operates approximately one hundred other amusement centers at major shopping malls in metropolitan centers throughout the nation and has, as its mode of operation, the practice of keeping an adult manager on duty at all times in its stores to enforce its rules against gambling, smoking, and consumption of food and beverages on the premises. Apparently in consideration of the fact that A.C.I. operates what might be called a "high-class" amusement establishment and that A.C.I.'s president expressed a disinclination to open an amusement center at Town East Mall because of the age restriction, the Mesquite City Council, on April 5, 1976, enacted two ordinances to make operation of an amusement center at Town East more attractive to Plaintiff.

The April 5, 1976, ordinances first amended the Comprehensive Zoning Ordinance of Mesquite to authorize establishment of a coin-operated amusement center at Town East Mall; and second, amended the 1973 amusement center ordinance by exempting from the 17-year-old age restriction those:

"coin-operated establishments located in major shopping centers containing an enclosed mall and said establishments being operated only during the hours said mall is open and having no outside entrance and where said establishment does not offer for sale or allow the consumption of food, drink or other merchandise . ."

The April 5, 1976, ordinance, No. 1310, required only that children under the age of 7 years be accompanied by parent or guardian.

Upon enactment of these ordinances on April 5, 1976, A.C.I. commenced to prepare for operation of a center at Town East by entering into a lease agreement with Homart Corporation, owner of the shopping center, and by investing approximately $80,000 in leasehold improvements. In July of 1976, A.C.I. proceeded to file its application for a license only to have such application denied by the City Manager upon the unfavorable recommendation of the Chief of Police.

Apparently, between April of 1976, when the City Council modified its zoning and amusement center ordinances, and July of 1976, when A.C.I. filed its license application, police investigation revealed that 100% of the stock of A.C.I. was owned by Bally Manufacturing Co., a corporation engaged in the manufacture and sale of coin-operated amusement machines. The Bally Manufacturing Co. and its president had at one time been the subject of a Federal criminal indictment in Louisiana charging participation in racketeering and gambling activities; upon trial, Bally and its president were acquitted of the charges. The police also appear to have information to the effect that Bally Manufacturing Co. is somehow linked to the "mafia" or the "Cosa Nostra." As of July of 1976, the ordinance

then in effect, No. 1103, as amended by No. 1310, provided for denial of a license to applicants who had "a connection with criminal elements."

After denial of the license application by the City Manager, A.C.I. appealed the matter to the City Council which on August 16, 1976, affirmed the City Manager's decision. On September 10, 1976, A.C.I. filed a petition in State court seeking an injunction requiring issuance of a permit to operate an amusement center at Town East Mall. Upon trial to the District Court of Dallas County, 95th Judicial District, a final judgment was entered on January 14, 1977, granting A.C.I. the relief prayed for. The State court concluded as a matter of law that the ordinance then in effect, No. 1103, was unconstitutional under the 14th Amendment of the Constitution of the United States and that such ordinance was also repugnant to Article 1, Sec. 19 of the Constitution of the State of Texas in that the use of the words "connection with criminal elements" are so vague, general and indefinite as to deny A.C.I. due process of law. The State court further found that the City's denial of A.C.I.'s application was not supported by substantial evidence that A.C.I. has any connection with criminal elements.

In compliance with the State court judgment, the City duly issued a license to A.C.I. on January 14, 1977, and proceeded to appeal the State court judgment. A.C.I. opened its amusement center on February 5, 1977. On February 7, 1977, the City Council met and enacted Ordinance No. 1353 repealing Ordinance No. 1310 which had created the exception from the 17-year old restriction discussed earlier. The February 7, 1977, Ordinance went on to attempt to rehabilitate the original amusement center ordinance by adding a definition of the term "connection with criminal elements." The definition added on February 7, 1977, is as follows:

"Connection with Criminal Elements is defined as that state of affairs wherein an applicant, or an officer of, principal stockholder of, person having a substan-

tial interest in or management responsibility for, a corporation or other organization wherein such organization is the applicant, directly or as parent, subsidiary or affiliate, has such association, acquaintance, or business association with parties having been convicted or not, to the extent that the fencing of stolen merchandise or illegally obtained funds, the procuring of prostitutes, the transfer or sale of narcotics or illegal substances is made more feasible or likely or the protection of those of tender years from unwholesome influences are rendered more difficult.

A determination by the United States Department of Justice that a party is a member of the 'mafia' or 'Cosa Nostra' family or that such party is engaged in or affiliated with a nationwide crime organization, whether formally or informally, shall be prima facie evidence, so far as the issuance of a license hereunder, that such person has 'connections with criminal elements' and constitute, within the meaning of this ordinance, 'criminal elements.' "

Upon learning of the enactment of the February 7, 1977, ordinance A.C.I. filed the instant action seeking injunctive and declaratory relief.

■ The initial challenge interposed by the Defendant goes to the question of subject matter jurisdiction; specifically, the City claims that less than $10,000 is in controversy. We believe the correct rule for determining damages is as follows:

"Where a business is threatened . . by a regulatory statute . . . the amount in controversy is the difference between the value of the business unregulated . . . and its value under the regulation . . . ."

C. A. Wright, Law of Federal Courts, Ch. 5, § 33, (3rd Ed. 1976), [citing *McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) and *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936)]. Applying this test, we find that Plaintiff easily satisfies the $10,000 jurisdictional amount.

■ Plaintiff first challenges the definition of "connection with criminal elements" contained in the February 7, 1977, ordinance. On its face, the definition of "connection with criminal elements," set forth above, is so vague and uncertain that it cannot stand attack, see, e. g., *Lanzetta v. State of New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939) [making it unlawful to be a "gangster"] and *Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) [requiring teachers to swear that they were not "subversive persons"]. As part of the judgment to be entered herein, therefore, the term "connection with criminal elements" and the definition of such term contained at Section 9 of the February 7, 1977, ordinance will be declared void for vagueness under the Due Process Clause of the Fourteenth Amendment. This does not dispose of the case, however, as Plaintiff also challenges the age restriction and the enforcement of such restriction.

At the preliminary and permanent injunction hearings in this action, the primary evidence elicited, in addition to proving up the background of the case set forth above, was related to Plaintiff's contention that the amusement centers it operates are supervised and regulated so as to avoid jeopardizing the public health, safety or morals. Plaintiff also offered evidence to show that over half of its customers are age 17 or below and that the age restriction, therefore, would severely affect the profitability of A.C.I.'s Town East store if it did not render the business entirely unprofitable.

Evidence was offered by the City to prove up the purposes of the City Council in enacting the ordinance. These reasons are set out in the four "whereas" clauses that precede the text of Ordinance No. 1353:

"WHEREAS, coin-operated amusement establishments have a tendency to attract patrons of tender years, and

WHEREAS, the congregation of youthful patrons creates problems of policing due to the need to protect such patrons from the influences of those who would promote gambling, sale of narcotics and other unlawful activities; and

WHEREAS, it is vital to the safety and welfare of the inhabitants of the City of Mesquite and particularly those of tender years for whom a special duty is imposed upon the governing body to protect, that proper and suitable operators only are licensed to operate coin-operated amusement establishments and that such establishments be regulated to that end; and WHEREAS, it has been determined that the attraction of such establishments for those under seventeen (17) years of age is detrimental to such persons and to the health and welfare of the inhabitants of the City, generally."

Police officers testified that young people congregate at such amusement establishments, that several truancy arrests have been made at such centers (none at Plaintiff's establishment), and that in one instance a juvenile arrested for truancy at an amusement center was later found to be participating in the free school lunch program.

While the above seem incredibly slender reeds upon which to base an ordinance restricting the age at which persons may enter a coin-operated amusement center, there is no fundamental right or interest involved in such legislation and courts have traditionally permitted greater latitude in legislation regulating conduct of minors than of adults, see *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) and *Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). There is little question but that amusement centers are a proper subject for regulation through the police power. The Supreme Court of the United States has, for example, upheld an ordinance of the City of South Pasadena, California, which prohibited the keeping or maintaining of any hall or room in which billiard or pool tables were kept for hire, except in hotels having twenty-five or more bedrooms, *Murphy v. People of the State of California,* 225 U.S. 623, 32 S.Ct. 697, 56 L.Ed. 1229 (1912). The Supreme Court deemed the operation of a pool hall to be a "nonuseful" occupation. In addition, the City of Mesquite as a home rule city has power under Texas law, Art. 1175, V.A.T.S.,

"22. To regulate the location and control the conduct of theaters, moving picture shows, ten pin alleys, vaudeville shows, and all places of public amusements."

The proper test, therefore, is whether there is any rational basis to support such legislation. As the Supreme Court of the United States made clear in *Goldblatt v. Hempstead,* 369 U.S. 590, 596, 82 S.Ct. 987, 991, 8 L.Ed.2d 130 (1962),

"Our past cases leave no doubt that appellants had the burden on 'reasonableness.' E. g. *Bibb v. Navajo Freight Lines,* 359 U.S. 520, 529, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959) (exercise of police power is presumed to be constitutionally valid); *Salsburg v. Maryland,* 346 U.S. 545, 553, 74 S.Ct. 280, 284, 98 L.Ed. 281 (1954) (the presumption of reasonableness is with the State); *United States v. Carolene Products Co.,* 304 U.S. 144, 154, 58 S.Ct.778, 784, 82 L.Ed. 1234 (1938) (exercise of police power will be upheld if any state of facts either known or which could be reasonably assumed affords support for it)."

Applying this test, Plaintiff's petition for a permanent injunction to enjoin enforcement of the 17-year-old restriction must be denied.

Plaintiff further argues that the ordinance was calculated to harass it or to circumvent the force of the State court injunction. Although the circumstances are indeed suspicious, we are unable to psychoanalyze the members of the Mesquite City Council to determine their motives and are limited to analyzing whether the ordinance is unconstitutional on its face or as applied. As Justice Black observed,

". . . it is extremely difficult for a court to ascertain the motivation, or collection of different motivations, that lie behind a legislative enactment . . . It is difficult or impossible for any court to determine the 'sole' or 'dominant' motivation behind the choices of a group of legislators."

*Palmer v. Thompson,* 403 U.S. 217, 224–225, 91 S.Ct. 1940, 1945, 29 L.Ed.2d 438 (1971).

 Plaintiff next argues that under the facts of this case, the City should be estopped to enforce the ordinance. Federal courts have consistently held, however, that State and local governments cannot be estopped from exercising their police power, see, e. g. *Texas & New Orleans Railroad Company v. Miller,* 221 U.S. 408, 31 S.Ct. 534, 55 L.Ed. 789 (1911) and *Sanitary District of Chicago v. United States,* 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352 (1925).

 A.C.I. further contends that the ordinance denies it equal protection of the law in that the 17-year-old restriction is allegedly not enforced against another amusement machine establishment. Courts have, of course, found an equal protection violation where an ordinance, valid on its face, was administered in a discriminatory manner, *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). In this case, Plaintiff's claim is that the age restriction is not enforced against an amusement center known as Fun Fair which is located in the Big Town Shopping Center in Mesquite. It would appear, however, that Fun Fair may have qualified as an amusement center located in an enclosed mall within the terms of the April 5, 1976, ordinance and, therefore, have been exempt from the age restriction from April 5, 1976, until the amended ordinance in question was enacted on February 7, 1977. Because enforcement of the February 7, 1977, ordinance has been enjoined by this Court since February 11, 1977, there were less than four days from April 5, 1976, to the present within which the City of Mesquite had an opportunity to enforce the age restriction against Fun Fair. Upon this record, therefore, we are unable to find that the age restriction has been enforced in a discriminatory manner so as to raise a constitutional question under the Equal Protection Clause of the Fourteenth Amendment.

 Plaintiff also argues that the ordinance violates the Equal Protection Clause by *failing* to distinguish between its establishment and the Fun Fair establishment.

The argument here is that A.C.I.'s establishment is supervised by an adult who enforces company rules against gambling, smoking, drinking and eating on the premises while no manager is regularly on duty at Fun Fair. We are unable to find any precedent for so holding and are of the opinion that it would be impossible for states and municipalities to custom-tailor every regulatory ordinance to take into account the mode of operation, skill and trustworthiness of each person subject to regulation.

Counsel for Defendant is requested to prepare and submit appropriate form of judgment, approved as to form by counsel for Plaintiff. Costs of this action are to be taxed against the parties incurring same.