Robert LEONARD et al.,
Plaintiffs-Appellants,

v.

The CITY OF COLUMBUS et al.,
Defendants-Appellees.

No. 75–2344.

United States Court of Appeals,
Fifth Circuit.

May 9, 1977.
Rehearing En Banc Granted July 1, 1977.

Joel M. Gora, American Civil Liberties Union, New York City, Ellen Leitzer, American Civil Liberties Union Foundation of Ga., Inc., Margie Pitts Hames, Neil Bradley, Atlanta, Ga., Melvin L. Wulf, American Civil Liberties Union Foundation, New York City, for plaintiffs-appellants.

Lennie F. Davis, City. Atty., E. H. Polleys, Jr., Asst. City Atty., Columbus, Ga., for defendants-appellees.

Before BROWN, Chief Judge, and COLEMAN and MORGAN, Circuit Judges.

COLEMAN, Circuit Judge.

Robert Leonard and thirty-seven others filed this action in the United States District Court for the Middle District of Georgia, June 18, 1971, seeking declaratory relief, equitable relief, and damages. As originally cast, the suit alleged that the defendants engaged in certain racially discriminatory employment practices. At the pre-trial conference, however, the suit was radically narrowed, leaving only seven policemen plaintiffs with claims for job reinstatement plus damages for wrongful discharge. Before trial, one of the seven remaining plaintiffs also opted out. Thus, of the original thirty-seven, we now have six left, quite a decimation of forces, to say the least.

After a three day non-jury trial in February, 1975, the District Court entered an order dismissing the complaint on jurisdictional and abstention grounds. The plaintiffs appeal, asking this Court to vacate the dismissal and to instruct the District Court to decide the case on the merits. Their position is well taken.

The turbulent events from which this case arose have been well documented in other cases. See, *Community Action Group v. City of Columbus*, 5 Cir., 1973, 473 F.2d 966, *reh. den.*, 475 F.2d 1404; *Sumbry v. Land*, 127 Ga.App. 786, 195 S.E.2d 228 (1972), *cert. den.*, 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973).

The basic facts from which this appeal arose were:

In May, 1971, the Columbus, Georgia, police department employed approximately 318 officers, of whom fifty-two were black. Various black officers including appellants, formed the Afro-American Police League. This was the vehicle by which the black officers presented their grievances to public officials and by which they publicized their complaint of discrimination against blacks within the police department. The group's activities included issuing a press release which criticized various police activities, holding a press conference on those charges, and formulating a petition of grievances, describing their complaints of discrimination within the department.

On May 29, 1971, a black patrolman, John Brooks, failed to appear in court as a witness and was charged with contempt. He was subsequently arrested under the Judge's order. He was also suspended indefinitely on charges of conduct unbecoming an officer and feigning sickness to avoid duty. Due to this, the seven officers picketed the police station on May 29 and 30, 1971. On May 30, a meeting was held between the disgruntled black officers and various civic leaders. Appeals were made for the patrolmen to return to work. A motion was made that they go back to work, which carried by a split vote. No bargains were apparently struck at the meeting but it was stated that an attempt would be made to confer with officials to see if a solution to the complaints could be achieved.

Later on May 30, Patrolman Leonard was called off his beat and told to report to police headquarters. When he arrived, the deputy chief read a list of charges which were to be directed against Leonard. Patrolman Clark was also called in and presented with various charges.

Upset over what they thought was unfair treatment and a violation of a "cooling off" period allegedly agreed upon, the black policemen met on the morning of May 31 and decided to again picket the police department. Wearing their police uniforms, each of the seven policemen carried hand-lettered signs with statements such as: "We Don't Want to be Policeboys—We Want to be Policemen", and "Afro-American Police League Want (sic) Justice." Later that day, with the news media assembled in front of the station, the seven black officers publicly unstitched the United States flag emblem from their uniforms. They stated that the American flag represented liberty and justice, and they would not wear the flag until they received those things for which the flag stood.

They resumed picketing for a while, but were told to report to the police major's office. When they arrived, they were advised that they had been dismissed from the police force and were given letters explaining their dismissal. The letters stated:

"Effective this date, May 31, 1971, you are discharged from the Columbus Police Department for violation of Section 39, paragraphs 'G' and 'R' of the General Rules of Conduct of the Police Manual, which states:

"(G) Conduct unbecoming an officer which might be detrimental to the service

"(R) Any other act or omission contrary to good order and discipline of the department

in that you did publicly remove the American Flag from the Columbus Police Uniform while picketing in front of Police Headquarters on May 31, 1971.

"The American Flag was made an official part of the Columbus Police Uniform by a unanimous vote of the City Commission on August 18, 1969.

Very truly yours,
B. F. McGuffey
Chief of Police"

Later that day, the Public Safety Director held a press conference at which he read a statement which explained the actions taken by the City in dismissing the officers.[1]

As the case is now presented, the basis of appellants' complaint concerns allegations of procedural defects in the dismissals and discharge for unconstitutional reasons. At the time of the dismissals, City Ordinance No. 71–7 was in effect. This ordinance established disciplinary procedures for the Columbus Police Department. The appellants complain that their dismissals were effectuated without the procedural safeguards afforded by the ordinance.[2]

On June 4, 1971, counsel for appellants wrote the defendants, stating that the discharged patrolmen wished to preserve their rights to a hearing before the Police Hearing Board and requested seven days' notice prior to the hearings. On June 10, the Deputy Chief sent a letter to the appellants, replying that each had the right to appeal their dismissals to the Board and that the hearing would be scheduled in the near future. The letters also said that they would be notified of the date, time, and place for the hearing.

On June 18, the present suit was filed in the United States District Court.

On June 24 and 25, the appellants received letters from the Deputy Chief, advising them that their hearings were scheduled for June 28. In addition to restating

---

1. I have this date instructed Chief B. F. McGuffey to dismiss from the Columbus Police Department the following officers:

Patrolman George Arnold
Patrolman J. H. Clark
Patrolman Robert Leonard
Patrolman G. L. Smith
Patrolman W. L. Pearson
Patrolman F. L. White
Patrolman V. Willis
for:
Conduct unbecoming an officer which might be detrimental to the service.
Other acts of omission contrary to good order and discipline of the department.
The Director of Public Safety, Chief of Police and Command Officers have exercised patience and forbearance concerning the conduct individually and as a group by these black officers who call themselves the Afro-American Police League.
Beginning March 26, 1971, and on various dates thereafter, these officers have repetitiously made baseless allegations of unlawful conduct, racism, and discrimination against their fellow officers, the Director of Public Safety, Chief of Police and ranking officers.
They did not present their grievances through channels prior to other public proclamations and accusations.
The F.B.I., Grand Jury, and a Special Committee appointed by the Mayor have addressed themselves to the group's discontents. This obviously has not been satisfactory to these men who are more concerned with publicity than fact.
Today they picketed the Columbus City Police Department and removed the American Flag from their uniforms. These men did not enlist in the Police Department, they do not have to wear that uniform or Flag again; they are dismissed.

2. Although their complaint centers on their being dismissed before receiving a hearing, they also state that they failed to receive prior notice of the charges, did not have an opportunity to respond, and were denied the rights of confrontation and to consult with counsel.

the charges contained in the original letters of dismissal, these letters set forth additional charges against appellants based on conduct prior to their discharges.[3] At the request of Leonard's counsel, the hearing was postponed until July 9. Five other appellants received a hearing on July 15. White's hearing was held on July 22. The dismissals of Leonard and White were unanimously upheld by the Board. The remaining dismissals were upheld on four to two votes. No attempt was made by the plaintiffs to have the Board decision reviewed in the state courts, although such review is available, *Ball v. Police Committee of the City of Atlanta*, 136 Ga.App. 144, 220 S.E.2d 479, 480 (1975).

As noted, following a trial in this action, the District Court disposed of the case on jurisdictional and abstention grounds and did not reach the merits of the plaintiffs' claims. In so doing, the Court stated:

"It has been observed that the 'Civil Rights Act, unlike federal habeas corpus, does not permit a second bite at the cherry'. *Lackawanna Police Benevolent Association v. Balen*, 446 F.2d 52, 53 (2 Cir., 1971). By attempting to invoke the jurisdiction of this Court after invoking the jurisdiction of the Police Hearing Board, the plaintiffs have sought the forbidden 'second bite'. They seek to relitigate the same cause of action, based on the same set of facts, merely by changing legal theories and sovereignties. They do so despite the availability of a state process of judicial review of decisions of quasi-judicial tribunals such as the Police Hearing Board. (citing *McClung v. Richardson*, 232 Ga. 530, 207 S.E.2d 472 (1974)."

The second factor upon which the District Court based its opinion was that plaintiffs' claim of wrongful discharge was predicated upon constitutional grounds *and* the alleged misapplication of the local ordinance. Accordingly, had the plaintiffs prevailed before any of the four levels of state tribunals available to them there would have been no necessity for the federal action seeking reinstatement. This, said the Court, presented a classic case for the application of the abstention doctrine:

"The present case is in essence an employment dispute, involving a local regulatory scheme which is of great interest to the local government, and cases of this genre normally are appropriate for state adjudication. This Court should not serve as an instrument for the disruption of state administrative proceedings conducted on matters of local concern."

The facts and legal issues here presented are not novel. A strikingly similar case was before this Court in *Moreno v. Henckel*, 5 Cir., 1970, 431 F.2d 1299. In *Moreno*, a city security guard was fired for "conduct prejudicial to good order". He appealed the dismissal to the San Antonio Civil Service Committee which recommended that he be reinstated. This recommendation, however, was not followed and the City Manager upheld Moreno's dismissal. Despite the availability to Moreno of adequate state court review, he elected to file a § 1983 action in the United States District Court. This suit for injunctive relief, a declaratory judgment, and damages, alleged that he had been discharged in a procedurally defective manner for unconstitutional reasons. The District Court applied the abstention doctrine and dismissed the complaint on the ground that "a remedy was available to the plaintiffs in the Texas Courts". Id. at 1300. We reversed. In so doing we stated:

---

3. These additional charges were as follows:

Arnold: Feigning sickness to escape duty; participation in unlawful picket.

Clark: Conduct unbecoming an officer by use of profane and abusive language toward female employees of police department; participation in unlawful picket; absent from duty without leave.

Leonard: Feigning sickness to escape duty; two counts of neglect of duty; participation in unlawful picket; conduct unbecoming an officer.

Pearson: Feigning sickness to escape duty; participation in unlawful picket.

Smith: Participation in unlawful picket.

White: Conduct unbecoming an officer by pawning a stolen movie projector; participation in an unlawful picket; feigning sickness to escape duty.

Willis: Participation in unlawful picket.

"The fact that a state remedy is available is not a valid basis for federal court abstention.

\* \* \* \* \* \*

"After [Moreno's] dismissal by the City Manager, he was forced to choose between one court and another court to decide his rights under the Civil Rights Act. He made the natural choice. His case turns upon federal rights of a particularly high order.

\* \* \* \* \* \*

"The abstention doctrine is an exception to the litigant's choice of forum, applied 'only in narrowly limited, "special circumstances".'

\* \* \* \* \* \*

"We yet like to believe that wherever the Federal Courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum."

*Moreno v. Henckel, supra,* at 1300, 1307, 1309.

We doubt that this result falls afoul of the recent Supreme Court decision of *Juidice v. Vail,* —— U.S. ——, 97 S.Ct. 1211, 51 L.Ed.2d 376 (dated March 22, 1977). Therein, the Supreme Court applied the principles of *Younger v. Harris*[4] and *Huffman v. Pursue, Ltd.*[5] to an injunction by the District Court against enforcement of contempt procedures in New York state courts. The High Court there stated that nothing more was required to invoke *Younger* than the party's *opportunity* to present their federal claims in the state proceedings (emphasis in original). *Juidice,* however, involved a writ running from a state court which had jurisdiction to issue it, not the failure to exercise a state court appeal from local administrative action.

We think *Moreno v. Henckel, supra,* teaches that the District Court should have decided this case on the merits. According-

ly, we vacate the judgment of dismissal and remand the case for a decision on the merits, the Court having already conducted a full evidentiary trial in the matter.[6]

VACATED and REMANDED.

ON PETITION FOR REHEARING
AND PETITION FOR REHEAR-
ING EN BANC

Before BROWN, C. J., and THORN-BERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL and FAY, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

---

**4.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**5.** 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

**6.** On remand, at its initial determination, the District Court may allow the record to be appropriately supplemented.