**J. Wayne HOUSWORTH et al.**

v.

**Patrick C. GLISSON.**

**Civ. A. No. C–77–2060–A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 14, 1978.

vidual notarization and which postdates *Jenness* by nearly three years.

Julian H. Henry, Athens, Ga., Edward Augustine, Atlanta, Ga., for plaintiffs.

George Dillard, James H. Weeks, Decatur, Ga., for defendant.

## ORDER

HENDERSON, District Judge.

This is an action brought for declaratory and injunctive relief and damages predicated on 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. §§ 1983 and 1985. The plaintiffs [1] are owners of retail stores which sell materials that may be used for the consumption of illegal drugs such as marijuana and cocaine. The defendant is the Director of Finance of DeKalb County, Georgia, who is charged with the duty of administering the county business license ordinance. Presently pending are the defendant's motions to

---

1. According to the amended complaint the plaintiffs are J. W. Housworth and D. T. Lackey d/b/a Windfaire, Inc.; Glen Franklin Salter d/b/a Starblaze; and Barry Bakst d/b/a Cheap Thrills Records & Tapes.

dismiss[2] and for summary judgment and the plaintiffs' motion for a preliminary injunction.

On December 20, 1977 each of the plaintiffs was served with a notice of a hearing to show cause why their licenses should not be revoked. Subsequently, the defendant revoked the plaintiffs' business licenses, finding that they had sold certain items which could be described as drug paraphernalia.[3]

One day before the scheduled hearings this action was filed (although the defendant was not served until January 27, 1978) and the plaintiffs immediately moved for a temporary restraining order in this court which was denied. Pursuant to the ordinance, the DeKalb County Board of Commissioners (hereinafter referred to as the "Board") met to review the revocations and on March 28th affirmed the defendant's decision. Three days later a hearing was held in this court on the plaintiffs' motion for a preliminary injunction. Then on April 27, 1978, the plaintiffs petitioned the Superior Court of DeKalb County for a writ of certiorari, pursuant to Ga.Code Ann. § 19–101, to obtain judicial review of the administrative proceedings.

The most significant ground urged in support of the motion to dismiss is the doctrine of abstention as articulated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). At least until the time the plaintiffs filed their motion for certiorari in state court, *Younger* and its progeny did not apply because there was no pending state *court* proceeding with which this court could interfere. *Leonard v. City of Columbus,* 551 F.2d 974 (5th Cir.), aff'd en banc, 565 F.2d 957 (1977), cert. docketed No. 77–1032 (Jan. 20, 1978).

*Leonard* held that abstention was improper when a police officer, discharged by the city, refrained from exercising his right, apparently similar to that of the plaintiffs' in the present case, to appeal to a Georgia superior court an adverse administrative decision. Of course, the plaintiffs here chose to apply for certiorari, but until then, *Leonard* controlled this case.

The defendant seeks to distinguish *Leonard* by pointing out that the Board's power to review the defendant's decision is judicial in nature and therefore state court proceedings were in fact begun when the plaintiffs appealed to the Board. The *Leonard* court recognized that review by a state court was available but held nonetheless that the absence of such proceedings at the time the federal suit was filed permitted and, in fact, compelled the district court to reject abstention. 551 F.2d at 978. In noting the availability of relief through certiorari the court cited *Ball v. Police Committee,* 136 Ga.App. 144, 220 S.E.2d 479 (1975), which expressly states that the municipal administrative hearing was a "judicial proceeding." Id. at 145, 220 S.E.2d 479.

■ Thus, the nature of the hearing at the administrative level appears to have been unimportant to the court of appeals because, regardless of whether the Board acts in a judicial manner, it is not a court of law. Such a distinction is not contrary to the philosophy of *Younger* and *Juidice* since the state's interest in being free from interference with its administrative proceedings, quasi-judicial though they may be, is not sufficient to require a federal court to abstain. See *Juidice v. Vail, supra* 97 S.Ct. at 1217–18.

■ Therefore, up until April 27, 1978 this court could not have refrained from

---

**2.** The defendant filed two separate but virtually identical motions to dismiss which will be considered as one motion.

**3.** Specifically the defendant found that the plaintiffs sold the following objects: "One cocaine cutter kit, One quality tester diometer for cocaine, One snorter for snorting cocaine" (Starblaze); a "Complete cocaine cutting kit, One 'Power Hitter' marijuana smoking apparat-

us with instructions for condensed marijuana smoking, one Micard instruction card for use with a drug tester which tests cocaine, THC, heroin and other drugs for quality" (Windfaire, Inc.); and "1 Casey Jones cocaine cutting kit, 1 hash adapter for re-smoking hashish, 1 marijuana testing kit, 1 hashish container" (Cheap Thrills Gift Shop). Glisson's Answer, Exhibits A, B and D.

considering the complaint. However, the filing of the plaintiffs' petition in state court creates a new problem because *Younger* principles may apply even when the federal plaintiff wins the race to the courthouse by filing in district court before his adversaries can initiate state proceedings against him. In a case where the plaintiff is the first to file suit, the federal court must abstain if the state court action is commenced "before any proceedings of substance on the merits have taken place in the federal court," *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975), or while "the federal litigation was in an embryonic stage and no contested matter had been decided," *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 929, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975). In both *Hicks* and *Doran* (the Court's opinions were issued within a week of each other), the state court proceedings had begun on the day following the commencement of the federal action. The opinions give little guidance as to what course to follow when the two suits are not filed contemporaneously. Two recent cases indicate that abstention under circumstances such as these are intertwined with the issue of whether to grant injunctive relief. In *Morial v. Judiciary Commission,* 565 F.2d 295 (5th Cir. 1977) (*en banc*), the district court granted an injunction against enforcement of an alleged unconstitutional statute and oral argument was heard by a panel of the Fifth Circuit Court of Appeals before state court actions were initiated. Without specifically addressing the problem, the court of appeals held that the district court properly rejected abstention.[4] *Id.* at 299.

More illuminating is *Graham v. Breier,* 418 F.Supp. 73 (E.D.Wis.1976), where the district court entered a temporary restraining order prior to the commencement of a state action. Although noting that a temporary restraining order hardly constitutes a final determination on the merits, the court decided that because the movant must establish a prima facie claim to obtain such relief, "proceedings of substance on the merits," within the contemplation of *Hicks,* had taken place in the federal suit as of the date the order was signed. *Id.* at 77–78.

■ The same is true in the present case. Because it appears that the plaintiffs have made a sufficient showing with respect to three of the criteria for preliminary injunctive relief, the court must determine the fourth, i. e., the likelihood of success on the merits. That consideration began on March 31, 1978 when the hearing for injunctive relief was held, twenty-seven (27) days before state court proceedings began. Consequently, it appears that abstention would not be proper in view of the *Hicks* and *Doran* holdings.

■ Before deciding the issue of injunctive relief several other grounds for dismissal raised by the defendant must be addressed. First, although the complaint was filed on December 28, 1977, the defendant was not served until January 27, 1978. This is hardly the prompt service envisioned by Rule 4(a), Fed.R.Civ.P., but the defendant has not shown any prejudice or harm resulting therefrom. No action had been taken before January 27, 1978 and the defendant in fact participated in the proceedings prior to service. Therefore, dismissal cannot be predicated on this ground. *H. Alpers & Assocs. v. Omega Precision Hand Tools, Inc.,* 62 F.R.D. 408 (E.D.Pa.1974); *Ashland Oil & Refining Co. v. Hooker Chemical Corp.,* 51 F.R.D. 512 (S.D.Ohio 1970).

■ The defendant's argument that the termination of the hearing before him mooted any challenge to procedural due process also lacks merit. Such reasoning would virtually preclude effective relief from the denial of constitutional rights in administrative proceedings.

■ The defendant also contends that this action is really one against DeKalb County and that any damages assessed must be paid from county funds. It is true that a plaintiff may not name as defend-

---

4. The opinion does not make clear what state court proceedings were being referred to in its discussion of *Younger.* Some state suits are described at 297 n. 3.

ants members of a governmental entity which itself is immune from suit under Section 1983 simply to create a conduit for access to public funds. *Muzquiz v. City of San Antonio,* 528 F.2d 499 (5th Cir. 1976) (*en banc*). Yet in *Muzquiz* the plaintiffs sought affirmative injunctive relief against members of a pension fund board of trustees to require them to make restitution of certain money obtained by the fund. The court of appeals has been careful to limit the effect of *Muzquiz* to situations where plaintiffs make a similarly transparent effort to reach public funds through Section 1983. See *Miller v. Carson,* 563 F.2d 741 (5th Cir. 1977); *Gates v. Collier,* 559 F.2d 241 (5th Cir. 1977); *Thurston v. Dekle,* 531 F.2d 1264 (5th Cir. 1976).

■ The plaintiffs here do not appear to be making such an attempt. Injunctive and declaratory relief is properly sought against the defendant in his official capacity. See *Miller v. Carson, supra* at 747–48. In addition, they ask for damages from the defendant individually for alleged intentional acts depriving them of their constitutional rights. *Reeves v. City of Jackson,* 532 F.2d 491 (5th Cir. 1976). To adopt the defendant's theory "would be a long step backward in federal jurisdiction." *Miller v. Carson, supra* at 748.[5]

■ The defendant is correct in noting that the complaint fails to allege any acts constituting a conspiracy to deprive the plaintiffs of their constitutional rights. *Granville v. Hunt,* 411 F.2d 9 (5th Cir. 1969). More importantly, Section 1985 is available to redress only certain types of class-based ills, none of which seem to be involved here. *McLellan v. Mississippi Power & Light Co.,* 545 F.2d 919 (5th Cir. 1977) (*en banc*); *Drury v. Brumley,* No. CV–277–76 (S.D.Ga. Mar. 21, 1978). Consequently, claims under Section 1985 must be dismissed.

Finally, the county is not an indispensable party under Rule 19. See *Liquifin*

*Aktiengesellschaft v. Brennan,* 383 F.Supp. 978 (S.D.N.Y.1974); 7 Wright & Miller, *Federal Practice & Procedure* § 1617 at 181. Moreover, the fact that the plaintiffs have inadequately alleged the amount in controversy for purposes of jurisdiction under 28 U.S.C. § 1331(a) does not matter since jurisdiction is alternatively premised on 28 U.S.C. § 1343(4).

■ The defendant moves for summary judgment insisting that the Board's decision to affirm the revocation is similar to a judgment and, hence, this suit is barred by *res judicata.* As a preliminary point it should be noted that *res judicata,* when invoked in a federal question action, is a matter of federal law. *Maher v. City of New Orleans,* 516 F.2d 1051 (5th Cir. 1975), *cert. den.* 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976).

■ It is true that *res judicata* may sometimes attach as a result of an administrative proceeding. *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). However, the doctrine should be applied to administrative action only when the purposes of *res judicata* would be served. 2 Davis, *Administrative Law Treatise* § 18.02, at 548 (1958). *Res judicata* should be sparingly used when the effect is to pretermit a determination of legal issues by a court of law. *Id.* § 18.03, at 566. Another factor weighing against *res judicata* is the fact that the Board itself passed the ordinance under attack, 1958 Ga. Laws 582, 583, which leaves in doubt its status as a neutral arbiter of the validity of the law. In summary, the public interest in finality of judgments is outweighed by its interest in the determination of legal questions by a court of law instead of by an administrative body.

The four prerequisites to preliminary injunctive relief are:

(1) a substantial likelihood that the movant will ultimately prevail on the merits;

---

5. Since the plaintiffs are not actually suing the county there is no reason to believe that public funds must be spent in the event they prevail. Also, this determination that the defendant is not merely a nominal party dispenses with his

arguments concerning the state law requirement that counties must be sued in their own names. See Ga.Code Ann. §§ 2–5801 and 23–1503.

(2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if it is issued, would not be adverse to the public interest.

*Compact Van Equipment Co. v. Leggett & Platt, Inc.,* 566 F.2d 952, 954 (5th Cir. 1978). The purpose of such a measure is to preserve the status quo so that the court may render a meaningful decision on the merits. *Id.* In this case, the plaintiffs seek a stay of the defendant's efforts to revoke their business licenses until the constitutionality of the ordinance and the procedures used to enforce it can be determined.

The plaintiffs have adequately shown irreparable harm, specifically from the injury to their businesses caused by the publicity attending the license revocations. John Wayne Housworth and Glenn Franklin Salter stated that business for January was very poor for Windfaire, Inc. and Starblaze.[6] Both also testified that many people visiting the shops after the revocations were announced assumed the stores to be closed.[7] In addition, the insurance policies for both establishments were cancelled on the date of the hearings because, at least in the case of Starblaze, of the adverse publicity.[8]

The defendant asserts that the plaintiffs may remain open at least until a ruling is obtained on the writ for certiorari. However, it is not the prospective closing which the plaintiffs complain of but rather the

popular conception that they have been closed or have operated in violation of a county ordinance. There is no evidence to indicate that the defendant is responsible for or even desires to cultivate this public attitude but the record nevertheless implies that it and the attendant injury to the plaintiffs is a result of his attempts to enforce the ordinance.

Furthermore, the defendant contends that the plaintiffs have an adequate remedy at law through certiorari in state court. It is this very proceeding which the plaintiffs say irreparably harms them. Should they continue to lose at each remaining step in the state suit more adverse publicity will conceivably result. Also, the state court proceedings have barely begun and the plaintiffs, assuming they have a right to be in federal court because of the inapplicability of the abstention doctrine and assuming that the pendency of the revocation action is detrimental to them, are entitled to speedy relief from an arguably unconstitutional ordinance.

In *Berryhill v. Gibson,* 331 F.Supp. 122 (M.D.Ala.1971), aff'd 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), a group of optometrists sought to enjoin allegedly unconstitutional administrative proceedings to revoke their licenses. After noting that the revocation would probably not be effective until the plaintiffs had exhausted their rights to seek judicial review, the three-judge district court found that the "inevitable" publicity attendant to the revocation (which, in fact, had not yet taken place when the court ruled) would cause irreparable harm. 331 F.Supp. at 126. The same is

---

**6.** The license revocation hearings took place on December 29th and the defendant's decision was announced in January.

**7.** The defendant objected to the witnesses' testimony about these statements on the ground of hearsay. However, the customers' declarations fit within the exception for statements "of the declarant's then existing state of mind," Rule 803(3), Fed.R.Evid.; *Rosenbloom v. Metromedia, Inc.,* 289 F.Supp. 737 (E.D.Pa.1968), rev'd on other grounds, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) (customer's statement of why he refused to deal with one whose reputation was libeled); 4 Weinstein's Evi-

dence ¶ 803(3)[03]. The veracity of the customers' statements that they thought the stores were closed is bolstered by numerous local newspaper stories which reported that the plaintiffs' licenses had been revoked by the defendant. Most of these accounts did not mention that the shops would be permitted to remain open until they had exhausted their rights to appeal the defendant's decision. Plaintiffs' Exhibit 1.

**8.** This testimony was also objected to as hearsay but it meets the same test discussed in note 7 supra.

true in this case except that the revocation has actually occurred and the plaintiffs have proved that the damage is real and not speculative.

The plaintiffs make three separate constitutional challenges to the ordinance and the procedure utilized to enforce it. The first involves the alleged lack of an impartial tribunal at the administrative level in that the defendant initiated the investigation by DeKalb County police into the plaintiffs' activities and, therefore, was "predisposed" to revoke the licenses. The second argument focuses on the impermissible burden on interstate commerce. Since, at this stage, the strongest of the constitutional attacks appears to be that of vagueness only it need be considered at this time.

The ordinance reads as follows:

In case it appears to the director of finance [the defendant] . . . that a business which must be licensed . . . has conducted business in such a way as to be a hazard to the health, safety and welfare of the citizens of the county, . . . the director of finance or his authorized representative shall notify the business in writing that its license shall not be issued or shall be revoked.

DeKalb County Code § 7–1024(a). The licenses were revoked by the defendant upon his finding that the selling of certain items by each of the plaintiffs "constitutes a hazard to the health, safety and welfare of the citizens of DeKalb County." Glisson's Answer, Exhibits A, B and D.

A statute violates the due process clause when it fails to

provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, for "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss,* 347 U.S. 612, 617 [74 S.Ct. 808, 812, 98 L.Ed. 989].

*Buckley v. Valeo,* 424 U.S. 1, 77, 96 S.Ct. 612, 662, 46 L.Ed.2d 659 (1976). The purposes served by the vagueness concept were outlined by Justice Marshall in *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222 (1972);

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. [footnotes deleted].

*Grayned* involved a statute whose vagueness allegedly infringed on First Amendment rights and in such a case a greater degree of specificity is required.[9] *Buckley v. Valeo, supra* 424 U.S. at 77, 96 S.Ct. at 662. In any event, the Supreme Court has stated the standards and purposes of the vagueness doctrine in substantially the same language regardless of whether the case involves First Amendment freedoms. *Cf. Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975) and *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). The same applies to the statement in *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), that "greater leeway" is allowed in "statutes governing business activities, where the acts limited are in a narrow

---

**9.** Despite the plaintiffs' contentions, the present case does not concern First Amendment rights. With one exception, the "Micard instruction card for use with a drug tester," none of the materials cited by the defendant in his findings appear to involve communication except that incidental to any commercial product such as labeling and instructions. See note 3 supra. Based on the record of the hearing before the defendant, his primary concern was with the use to which these objects could be put and not their possible expression of ideas. It is unrealistic to argue that the sale of such objects constitutes speech.

category." Although the results may change, so that more indefinite statutes are permitted according to the nature of the conduct regulated, the principles behind the vagueness doctrine remain the same and the language in *Grayned* is as important to the present case as any other.

 A law may be subject to this standard even though it does not impose criminal sanctions because the fundamental defect is not the penalty but rather

> the exaction of obedience to a rule or standard . . . so vague and indefinite as really to be no rule or standard at all. Any other means of exaction, such as declaring the transaction unlawful or stripping a participant of his rights under it, [is] equally within the principle of [vagueness].

*A. B. Small Co. v. American Sugar Refining Co.*, 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589 (1925). Thus, the lack of a criminal penalty in the DeKalb County ordinance does not excuse its indefiniteness so long as the effect is to deprive persons of thier rights. See *Giaccio v. Pennsylvania*, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966); *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); *Hall v. United States*, 148 U.S.App.D.C. 42, 459 F.2d 831 (D.C.Cir.1972); *Roe v. Conn*, 417 F.Supp. 769 (M.D.Ala.1976). Without question the granting, denial, or revocation of business licenses involves rights subject to the protection of the due process clause. *Hornsby v. Allen*, 326 F.2d 605 (5th Cir. 1964), aff'd on reh. 330 F.2d 55; see *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Wells Fargo Armored Service Corp. v. Georgia Public Service Commission*, 547 F.2d 938 (5th Cir. 1977).

In fact, laws governing business licenses have been struck down as unconstitutionally vague. The phrase "connection with criminal elements" invalidated an ordinance requiring licenses for amusement centers.

*Aladdin's Castle, Inc. v. City of Mesquite*, 434 F.Supp. 473 (N.D.Tex.1977). A Virginia statute regulating relationships between brewers or vintners and wholesalers met a similar fate.[10] *Vintage Imports, Ltd. v. Joseph E. Seagram & Sons, Inc.*, 409 F.Supp. 497 (E.D.Va.1976). In *Clark v. City of Fremont*, 377 F.Supp. 327 (D.Neb.1974), the court declared unconstitutional a local ordinance which subjected liquor licenses to revocation if the licensee violated or was convicted of violating a law "enacted in the interest of good morals and decency." [11]

The vagueness problem has also surfaced in other situations involving licensing but with less success for the licensees. *E.g., United States v. Polizzi*, 500 F.2d 856 (9th Cir. 1974), cert. den. 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *Do-Right Auto Sales v. Howlett*, 401 F.Supp. 1035 (N.D.Ill. 1975); *Merco Properties, Inc. v. Guggenheimer*, 395 F.Supp. 1322 (S.D.N.Y.1975); *Morgan v. City of Detroit*, 389 F.Supp. 922 (E.D.Mich.1975). One such case particularly merits discussion because the challenged ordinance permitted revocation of a business license on the ground of

> violation of a law of the State of Georgia which affects the health, welfare and safety and which violation occurred as a part of the main business activity licensed and not incidental thereto.

*106 Forsyth Corp. v. Bishop*, 362 F.Supp. 1389, 1397 (M.D.Ga.1972), aff'd, 482 F.2d 280 (5th Cir. 1973). The plaintiff's license for its movie theatre was threatened with revocation due to alleged violations of state obscenity law. The court declared the ordinance constitutional because, inter alia, it was not impermissibly vague.[12] The court of appeals affirmed the result but made no mention of the vagueness question. Instead, the per curiam opinion was predicated on *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973),

---

**10.** The statute there was enforceable by injunction or revocation of permits. 409 F.Supp. at 500.

**11.** Although the law also sought to regulate nudity and thus created First Amendment

problems, the portion quoted did not involve the First Amendment. 377 F.Supp. at 336–37.

**12.** Judge Bootle's summarization of the plaintiff's arguments does not include this issue. 362 F.Supp. at 1391.

which did not involve vagueness and the constitutionality of the revocation procedure. At any rate, even if *106 Forsyth* is controlling authority it is distinguishable because the ordinance there contains language different from the one presently before the court. At least the plaintiff in *106 Forsyth* was given notice that some specific conduct, such as violation of a state statute, would endanger its license. *Cf. Clark v. City of Fremont, supra*. The plaintiffs here were not apprised by the DeKalb County ordinance that any particular type of conduct might result in revocation.

■ In view of the considerations expressed in *Grayned*, the ordinance as it was applied to these plaintiffs is impermissibly vague. Nothing in the phrase, "hazard to the health, safety and welfare of the citizens of the county," provides adequate notice to a person of ordinary intelligence that shops such as the plaintiffs' would run afoul of this ordinance. At the time the plaintiffs commenced business, no law, state or local, prohibited the sale of such material.[13] Although they may have been aware of the primary use to which these objects would be put by their customers the language of the ordinance could not have forewarned them that they ran the risk of losing their investment at some time in the future without the benefit of the formality and safeguards necessary to the enactment of a law, ordinance, or regulation specifically prohibiting their activities.

It should be further noted that the ordinance is clearly subject to arbitrary and discriminatory enforcement and provides no guidelines to those who must decide its meaning and intent. Most people may agree that selling devices which have no obvious purpose other than to facilitate the use of dangerous drugs threatens the community's health, welfare and safety. But the decision of which devices fit this category becomes more difficult when something as innocuous and susceptible of legal or merely decorative use as a "marijuana pipe" is involved. Whether selling this merchandise falls within the ordinance's prohibition is a debatable question, particularly when conflicting lifestyles and political views suffuse the decision maker's perception of what buyers will do with the product.

■ A certain amount of vagueness must be tolerated in lawmaking because of the limitations of language and the infinite variety of human conduct. *Rose v. Locke, supra* 423 U.S. at 49–50, 96 S.Ct. at 243–244. Moreover, even statutes that could have been drafted more clearly are saved by their context or judicial gloss which imbues otherwise meaningless words with sufficient content to give fair warning of the law's scope. *Rose v. Locke, supra; Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); *Grayned v. City of Rockford, supra*. This ordinance, though has no context providing a clue to warn sellers of arguably drug-related paraphernalia that their activities may subject them to penalties. Nor are any decisions cited giving judicial interpretation to the wording of the ordinance.

There is little doubt that DeKalb County has the power to enact an ordinance prohibiting the sale of materials used in connection with illegal drugs, assuming such a law did not violate other constitutional standards or conflict with state statutes. However, the county has not yet chosen to do so in terms sufficiently specific to warn the plaintiffs that their conduct is prohibited. The ordinance is unconstitutionally vague and the plaintiffs have shown likelihood of success on the merits.

---

13. The court is aware of the recent enactment of H.B. 1368 (Ga.Code § 79A–811.1) and S.B. 441 (Ga.Code § 26–9913) which purport to prohibit the sale of drug-related paraphernalia. However, nothing in the record indicates that any action has been taken against the plaintiffs under these laws. The possible effect of the new statutes on the present action is practically nil due to the ambiguity of their terms which must be construed by the Georgia courts. See *High Ol' Times, Inc. v. Busbee*, No. 78–628–A (N.D.Ga. Apr. 14, 1978). Additionally, these laws were not in force until three months after the plaintiffs' licenses were revoked.

The third factor mentioned in *Compact Van Equipment* requires that the threatened injury to the moving party must exceed the damage to the opposing party. In this case the plaintiffs have more than adequately met this test because the defendant maintains that the businesses will be permitted to remain open until the completion of the appellate process. Thus, the preliminary injunction will have little or no short term effect on the defendant's interests [14] and such detriment as may appear is outweighed by the protection of the plaintiffs' freedom from sanctions imposed under an apparently unconstitutional ordinance.

Accordingly, the defendant's motion to dismiss is granted in part and denied in part. To the extent the complaint states a claim for relief under 42 U.S.C. § 1985 it is dismissed. The defendant's motion for summary judgment is denied. The plaintiffs' motion for a preliminary injunction is granted.

For the reasons set forth in the foregoing order, the defendant in the above styled action, his officers, agents, servants, employees, attorneys and those persons in active concert or participation with him who received actual notice hereof, are hereby enjoined until further order of the court from enforcing Section 7–1024(a) of the DeKalb County Code against the plaintiffs by revoking or not renewing, or causing revocation or nonrenewal, of their business licenses by any means.

---

**14.** For this reason no security as provided in Rule 65(c) will be required. *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300 (5th Cir. 1978); *International Controls Corp. v. Vesco*, 490 F.2d 1334 (2nd Cir.), cert. den., 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).